**AMERITRUST COMPANY, N.A. Plaintiff,**

**v.**

**Iraj DERAKHSHAN, et al., Defendants.**

**No. 1:92CV0931.**

United States District Court, N.D. Ohio, E.D.

July 16, 1993.

Ronald L. Kahn, James A. DeRoche, Ulmer & Berne, Cleveland, OH, for Ameritrust Co. Nat. Ass'n.

Brian K. Schaner, Cleveland, OH, for Iraj Derakhshan.

Henry J. Riordan, Dept. of Justice, Washington, DC, Annette G. Butler, Office Of The U.S. Atty., Cleveland, OH, for U.S. and I.R.S.

Daniel N. Steiger, Walter, Haverfield, Buescher & Chockley, Stanley Morganstern, Morganstern, MacAdams & Draper, Cleveland, OH, for Linda Jaenson.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

On May 12, 1992, the Ameritrust Company filed this impleader action under 28 U.S.C. § 1335 against Iraj Derakhshan, the Iraj Derakhshan Retirement Plan ("Retirement Plan"), the United States of America and the Internal Revenue Service (collectively "United States"), alleging that there was a dispute between the United States and Derakhshan as to the legal effectiveness of a federal tax levy entered against certain Retirement Plan funds. Ameritrust, as custodian of the Retirement Plan, requested this Court to allow it to deposit the funds with the Clerk of Court, and to release Ameritrust from any further liability to the parties.

On June 1, 1992, this Court granted Ameritrust's request. Specifically, this Court ordered Ameritrust to deposit the funds with the Clerk of Court; enjoined the parties from filing other actions against Ameritrust concerning the Retirement Plan; and ordered all defendants and other interested parties to interplead their claims to the funds. Subsequently, Linda Jaenson, Derakhshan's former wife, was joined as a defendant, and Ameritrust was dismissed as a party to the action.

Jaenson and the United States have filed cross-motions for summary judgment. For the reasons set forth below, this Court denies Jaenson's motion for summary judgment, and grants the United States' motion for summary judgment.

### I

The following facts are undisputed. Derakhshan failed to pay various federal taxes for a number of years. On January 2, 1987, the United States placed a levy upon Ameritrust, the custodian of certain funds in a "Keogh" account created by Derakhshan. The Keogh plan provided:

> The value of each Member's interest in the Fund as represented by such Member's Account shall be 100% vested in such Member at all times. However, no member shall have any right to assign, transfer, borrow, pledge, alienate, appropriate, encumber, commute or anticipate such member's interest in the Fund, or any payment to be made thereunder, and no benefits, or payments, rights or interest of a Member shall be in any way subject to any legal process or levy upon, garnish or attach the same for payment or any claim against a Member....

(Retirement Plan, Art. V, para. 7). The Retirement Plan also provided that Derakhshan, the sole beneficiary of the Keogh account, could terminate the plan upon sixty days notice, and receive the funds held by Ameritrust. (Retirement Plan, Art. X, para. 3).

Ameritrust responded to the tax levy by filing a quiet title action against Derakhshan and the United States to determine who owned the funds in Derakhshan's IRA and Keogh accounts. Ameritrust's claim to the assets was based on the fact that Derakhshan owed $10,873.49 on an Ameritrust VISA credit card account, and $50,050.99 on an Ameritrust "Goldline" credit account as of November 6, 1986. In granting the United States' motion for summary judgment, this Court held that because Ameritrust had failed to perfect its interest in Derakhshan's accounts, the United States' lien took priority over Ameritrust's interest in the accounts. (See Ameritrust Co. v. Derakhshan et al., No. C87–2902 (N.D.Ohio Sept. 18, 1989) (hereinafter "1989 Order")).

The United States placed other levies upon Derakhshan's Keogh account in March of 1989 and November of 1991. Ameritrust then filed this interpleader action. On July 27, 1992, the Ohio Court of Common Pleas issued a Qualified Domestic Relations Order ("QDRO"), which irrevocably assigned Derakhshan's Retirement Plan to Jaenson. In their cross-motions for summary judgment, the United States and Jaenson both claim that they are entitled to the assets in the Retirement Plan.

### II

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

The nature of materials properly presented in a summary judgment pleading is set forth in Federal Rule of Civil Procedure 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202

(1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. Although cross-motions for summary judgment do not necessarily demonstrate that no genuine issues of material fact exist, *United States v. Byrum*, 408 U.S. 125, 92 S.Ct. 2382, 33 L.Ed.2d 238 (1972), the resolution of this case depends entirely upon the resolution of questions of law.

The Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. §§ 1001 *et seq.*, contains a statutory prohibition against the assignment or alienation of pension benefits. Section 206(d) of ERISA states, in relevant part:

> (1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.
>
> . . . . .
>
> (3)(A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if that order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

29 U.S.C. § 1056(d)(1),(3)(A). See *General Motors Corp. v. Buha*, 623 F.2d 455, 460 (6th Cir.1980) (§ 206(d)(1) bar against assignment or alienation applies to all voluntary and involuntary encroachments on qualifying plans). The QDRO exception to the anti-alienation provision of ERISA is the only exception recognized in the statute.

The United States Supreme Court has interpreted § 206(d) narrowly. In *Guidry v. Sheet Metal Workers Pension Fund*, 493 U.S. 365, 375, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990), a union sought a constructive trust against an official's pension benefits after he pleaded guilty to embezzling funds

from the union. The district court imposed a constructive trust on the funds, and the Tenth Circuit Court of Appeals affirmed. In reversing these decisions, the Supreme Court wrote:

> Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.
>
> As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. The restriction on garnishment therefore can be defended only on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticability of defining such a standard reinforces our conclusion that the identification of any exception should be left to Congress.

493 U.S. at 375, 110 S.Ct. at 687.

Two years later, in *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), a chapter 7 bankruptcy trustee sought to recover the debtor's interest in an ERISA plan for inclusion in the bankruptcy estate. The Supreme Court wrote:

> We previously have declined to recognize any exceptions to ERISA's anti-alienation provision *outside* the bankruptcy context.... Declining to recognize any exceptions to that provision *within* the bankruptcy context minimizes the possibility that creditors will engage in strategic manipulation of the bankruptcy laws in order to gain access to otherwise inaccessible funds.

*Id.* at ——, 112 S.Ct. at 2250 (citation omitted) (emphasis in original).

## III

In its motion for summary judgment, the United States argues that this Court's 1989 Order controls the outcome of this action, and that the various claimants to the Retirement Plan are barred by *res judicata* and collateral estoppel from denying that:

> the funds in the "Keogh" and "IRA" accounts belong to the taxpayer, Iraj Derakhshan, that the federal tax liens for Iraj Derakhshan's tax liabilities attach to such funds, and that the liens of the United States are superior to the claims of any other party.

(United States' Motion for Summary Judgment, at 10).

In her dispositive motion, Jaenson asserts that the 1989 Order focused on Ameritrust's failure to perfect its security interest, and the respective priority to be accorded the liens asserted by Ameritrust and the United States. However, Jaenson claims that the 1989 Order did not address the issue of the United States' ability to levy the Retirement Plan funds. Jaenson then argues that the Retirement Plan, which is a qualified retirement plan under ERISA, is not subject to tax levies because Congress did not carve out an exception for federal tax levies in § 206(d) of ERISA. See 29 U.S.C. § 1056(d). Jaenson concludes that she is entitled to the Retirement Plan funds because she was assigned the funds pursuant to a QDRO, the only recognized exception to the anti-alienation provision of ERISA.

■ As an initial matter, this Court agrees with Jaenson that the 1989 Order did not address whether the United States was entitled to remove funds from the Retirement Plan. Although this Court decided that the United States' interest in the Retirement Plan had priority over Ameritrust's interest, this Court did not consider the effect of the

ERISA anti-alienation provision on the United States' ability to levy property, the issue which is squarely presently by the present action. Therefore, the United States' arguments based on *res judicata* and collateral estoppel must fail as a matter of law.

However, this finding is not fatal to the United States' motion for summary judgment.[1] Based on a consideration of the law governing the United States' authority to levy property and ERISA, this Court finds that the United States' levies against the Retirement Plan are valid, enforceable, and take precedence over Jaenson's claim.

26 U.S.C. § 6321 provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Sections 6321 and 6323 (which discuss the validity and priority of liens against various persons) do not bar the United States from asserting a federal lien against an ERISA retirement account. Moreover, in the present case, because the federal levies were filed before the issuance of the QDRO, the United States has priority over Jaenson's claim to the Retirement Fund.

Although § 206(d) of ERISA does not contain an exception for federal tax liens, the United States notes that ERISA does provide that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). Thus, in order to adopt Jaenson's reading of § 206(d), it would be necessary to alter or amend 26 U.S.C. §§ 6321, 6323, an act prohibited by 29 U.S.C. § 1144(d).

Furthermore, this Court finds that *Guidry* and *Patterson* are distinguishable from the present case. In *Guidry*, the Supreme Court rejected an argument that § 206(d) should be read to permit equitable exceptions to the prohibition against assignment or alienation of ERISA funds. However, unlike this action, there was no conflict of federal law presented in *Guidry*. In *Patterson*, the Supreme Court ruled that the § 206(d) prohibition against alienation was applicable in the bankruptcy, as well as non-bankruptcy, context. Specifically, the Supreme Court considered § 541(c)(2) of the Bankruptcy Code, which provides:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The Court held that the ERISA plan's anti-alienation provision constituted an enforceable transfer restriction for purposes of the bankruptcy code's exclusion of property from the estate. Thus, although the Court considered the bankruptcy code and ERISA, the Court found no conflict between the two bodies of law.

Finally, 26 C.F.R. § 1.401(a)–13(b) provides:

(b) *No assignment or alienation*—(1) *General Rule.* Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or any other legal or equitable process.

(2) *Federal tax levies and judgments.* A plan provision satisfying the requirements of subparagraph (1) of this paragraph shall not preclude the following:

(i) The enforcement of a Federal tax levy made pursuant to section 6331.

(ii) The collection by the United States on a judgment resulting from an unpaid tax assessment.

(Emphasis added). Jaenson argues that this Treasury regulation is invalid because Congress failed to put an analogous federal levy exception in § 206(d) of ERISA. This Court

---

1. This Court construes the arguments raised in the United States' response to Jaenson's motion for summary judgment as part of the United States' dispositive motion.

disagrees with this assessment. See *General Motors Corp. v. Buha,* 623 F.2d at 461–62 (finding Treasury regulations authoritative); *Retirement Fund Trust of the Plumbing, et al. v. Franchise Tax Board,* 909 F.2d 1266, 1284–85 (9th Cir.1990) (in absence of congressional intent to the contrary, definition in Treasury regulations was permissible construction of statute). Although strong policy considerations justify a narrow reading of the § 206(d) anti-alienation provision, see *Guidry,* 493 U.S. at 375, 110 S.Ct. at 687, the United States also has a strong interest in enforcing its tax laws, and collecting unpaid tax assessments. Given the fact that ERISA was not intended to alter or amend other federal laws, and the fact that a prohibition against the alienation of ERISA funds to satisfy a federal levy would limit the scope of 26 U.S.C. § 6321, this Court finds that the omission of a federal levy exception in § 206(d) of ERISA was an oversight rather than a considered decision by Congress.

## IV

In sum, this Court finds that the United States is entitled to the Retirement Plan funds, which are the subject of this dispute. This Court denies Jaenson's motion for summary judgment, grants the United States' motion for summary judgment, and enters final judgment in favor of the United States and the Internal Revenue Service.

IT IS SO ORDERED.

## ORDER

The Court has filed its memorandum and order which finds that the United States is entitled to the Retirement Plan funds; denies Jaenson's motion for summary judgment; and grants the United States' motion for summary judgment; therefore,

IT IS ORDERED that defendant Jaenson's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant United States' motion for summary judgment is granted; final judgment is entered in favor of the United States and the Internal Revenue Service, and the case is dismissed.

IT IS FURTHER ORDERED that this judgment is final and appealable.