**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ali H. SAWAF and Elena V. Sawaf,
Defendants–Appellants.**

No. 94–1236.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 28, 1995.

Decided Jan. 26, 1996.

Rehearing Denied March 19, 1996.

**120**

Keith V. Morgan, U.S. Dept. of Justice, Tax Division, Washington, DC, Gary R. Allen, Acting Chief (briefed), David English Carmack (briefed), David A. Shuster (argued and briefed), U.S. Dept. or Justice, Appellate Section, Tax Division, Washington, DC, Michael L. Shiparski, Asst. U.S. Atty., Daniel M. LaVille, Office of U.S. Atty., W.D.Mich., Grand Rapids, MI, for plaintiff-appellee.

Robert C. Anderson (argued and briefed), Marquette, MI, for defendants-appellants.

Before: KEITH, DAUGHTREY, and PHILLIPS *, Circuit Judges.

PHILLIPS, Circuit Judge.

This appeal requires us to decide whether the anti-alienation provision, § 206(d), of the Employee Retirement Income Security Act (ERISA) prohibits the Internal Revenue Service (IRS) from garnishing taxpayers' vested interest in an ERISA-qualified pension fund in order to satisfy an IRS judgment for unpaid taxes. The district court held that § 206(d) did not prohibit the garnishment and entered a garnishment order. On the taxpayers' appeal, we affirm.

I.

At various times from 1982 to 1989, the IRS assessed deficiencies against appellants Dr. and Mrs. Sawaf for the tax years 1980–82 and 1988. Because the Sawafs never paid these assessments, the IRS filed suit in 1990 in the U.S. District Court for the Western District of Michigan to reduce the liens created by the unpaid assessments to judgment. On August 30, 1991, the district court granted the IRS's motion for summary judgment and entered judgment against the Sawafs in the amount of $148,823.05, plus costs, statutory interest, and penalties from the dates of the assessments.

By February of 1993, the judgment remained unpaid. Consequently, the IRS filed an application for a writ of garnishment in the district court, as authorized by the Federal Debt Collection Procedure Act (FDCPA). See 28 U.S.C. § 3205. The district court issued a Writ of Continuing Garnishment to the garnishee, MFC First National Bank (MFC), requesting MFC to indicate whether it had in its custody any of the Sawafs' property. MFC responded that it had custody of approximately $300,-000 of a "Profit Sharing Agency Account" in which the Sawafs had a vested interest.[1]

When the Sawafs then requested a hearing regarding the garnishment, the district court granted the request and scheduled a hearing before a magistrate judge. At the hearing,[2]

---

* The Honorable J. Dickson Phillips. Jr., Circuit Judge of the United States Court of Appeals for the Fourth Circuit, sitting by designation.

1. MFC originally claimed but has now abandoned the claim that these assets were exempt from garnishment under 1) 45 U.S.C. §§ 231(m), 352(e); and 2) Mich.Comp.Laws Ann. §§ 38.40, 600.6023(1)(k).

2. The original hearing was scheduled for July 1, 1993. A hearing took place on that date, but the Sawafs did not attend because the clerk of the court had failed to add their address to the docket sheet and had thus failed to notify them of the hearing. The magistrate judge nevertheless issued a Report and Recommendation approving the requested garnishment (JA 52). The District Court rejected this first Report and Recommendation because the Sawafs were not given notice of the hearing (JA 58). The hearing discussed occurred later, on October 14, 1993.

Dr. Sawaf proceeded pro se and claimed that ERISA exempted his pension from garnishment. Counsel for the IRS responded that he understood Sawaf to be invoking ERISA's anti-alienation provision, 29 U.S.C. § 1056(d), as protection from garnishment, but that he believed the provision offered no protection against any IRS suits to enforce tax judgments.

At the close of the hearing, the magistrate judge indicated that, because the Sawafs were proceeding pro se, he would allow them seven days to produce any authority they believed supported their position. In response, Dr. Sawaf sent the magistrate judge two documents: (1) a copy of a 1993 letter from the IRS to MFC, offered to show that the pension fund sought to be garnished was qualified under I.R.C. § 401(a) and (2) a form 5500/CR Return/Report of Employee Benefit Plan.

The magistrate judge issued his Report and Recommendation on November 29, 1993. In it, he concluded that the Sawafs had failed to meet the burden of proof imposed on them by the FDCPA, *See* 28 U.S.C. § 3014(b)(2), which requires a defendant claiming his property is exempt from a federal debt collection action to prove he is entitled to the exemption. The magistrate judge rejected two of the Sawafs' claimed exemptions out of hand: 1) The exemptions claimed under 45 U.S.C. §§ 231(m) or 352(e) were inapplicable, as they address railroad employees' benefits; 2) The exemptions under Mich.Comp.Laws Ann. § 38.40 were inapplicable, as they pertain to Michigan state employee benefits.

Although he finally rejected it as well, the magistrate judge devoted more attention to the Sawafs' claimed exemption under Mich. Comp.Laws Ann. § 600.6023(1)(k), (*l*). Those subsections "exempt from levy and sale under any execution" any IRA, pension, profitsharing, or other account as defined by I.R.C. § 401. The magistrate judge noted that the post-hearing documents the Sawafs had submitted tended to show that their plan qualified under § 401. But he further explained that the Michigan exemption does not extend to any lien excluded from exemption by law. Mich.Comp.Laws Ann. § 600.6023(2). The magistrate judge then noted that Treasury Reg. § 1.401(a)–13(b)(2) provides that tax liens in favor of the United States are excluded from exemption by law. Accordingly, he determined that Michigan state law did not provide the Sawafs an exemption from the IRS garnishment. The magistrate judge then concluded that because the Sawafs had failed to prove they were entitled to any exemption, the court should, under the FDCPA, issue an order of garnishment to MFC in the amount of the unpaid judgment plus costs, penalties, and interest.

The magistrate judge then notified the parties of their rights to object to his report, and the Sawafs responded by sending an objection letter to the district court. The court approved the magistrate judge's Report and Recommendation in an order which noted that "Defendants have filed no specific objections to the Report and Recommendation. They merely state in their letter that they object to the report and recommendation and request a hearing. Defendants are not entitled to further hearing on this matter." (JA 82–83) Therefore, the district court adopted the Report and Recommendation, and it issued an Order of Garnishment directing MFC to pay the United States $191,644.57, plus interest, from the Sawafs' profitsharing account.

MFC paid the requested amount. In recognition of this payment, on February 1, 1994, the IRS filed a Termination of Garnishment and Satisfaction of Judgment with the district court. Later that month, the Sawafs—now represented by counsel—noticed this appeal.

## II.

■ The facts in this case are not in dispute; all contested rulings of the district court are on pure questions of law and are, therefore, reviewable *de novo*. *In re Embry*, 10 F.3d 401, 402–03 (6th Cir.1993).

As an initial matter, we note that there is some question whether the Sawafs' letter objecting to the magistrate judge's Report and Recommendation adequately preserved their objections to that report for appeal to this court. Under the Magistrates Act any

party objecting to the magistrate judge's recommendation may within ten days of receiving a copy of the report "file written objections to such proposed findings and recommendations as provided by the rules of court." 28 U.S.C. § 636(b)(1). Our rule is that a party *must* file its objections to a magistrate judge's report with the district court within the ten-day period or waive the right to appeal; objections must be *specific.* *See United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981); *Howard v. Secretary of Health & Human Servs.,* 932 F.2d 505 (6th Cir.1991).

■ In this case, the Sawafs mailed a letter to the district court that simply said, "We object to the report and recommendation given by [the magistrate judge]. Therefore we request a hearing in this matter." (JA 81) The IRS raises legitimate questions about the adequacy of this objection under our precedents. Certainly it cannot stand as a model or even as one minimally sufficient in all circumstances. In view, however, of the limited nature of the legal question that was disputed in the district court and our disposition of that issue on appeal, we will treat it as a sufficient objection to those aspects of the magistrate judge's Report that are now specifically challenged on appeal.

### III.

The Sawafs' primary contention is that the district court erred in approving the magistrate judge's recommendation that a writ of garnishment issue. Specifically, they contend that because their pension plan qualified under ERISA, § 206(d) of that act forbids involuntary alienation of the plans' funds, hence exempts their interest in the pension fund from the IRS's garnishment order. We disagree.

The IRS has secured a judgment against the Sawafs for the amount of their assessed tax deficiency. In order to enforce that judgment, the IRS proceeded under the Federal Debt Collection Procedure Act (FDCPA), 28 U.S.C. §§ 3001–3308 (1988). The FDCPA allows the United States to collect a judgment owed it by obtaining a garnishment against "property . . . in which the debtor has a substantial *nonexempt* interest and which is in the possession, custody, or control of a person other than the debtor." § 3205(a) (emphasis added); *see also* § 3202(a) (allowing enforcement of judgment through "any of the remedies [including garnishment] set forth in this subchapter").

■ Application of § 3205(a) to this case raises two questions: (1) whether the Sawafs' vested interest in their pension fund is the type of "property" that may be reached by FDCPA garnishment orders; and (2) if it is, whether ERISA nevertheless exempts the pension fund from such orders. Turning to the first question, the FDCPA's definition of "property" is broad: " 'Property' includes any present or future interest, whether legal or equitable, in real, personal . . . or mixed property, tangible or intangible, vested or contingent, wherever located and however held (*including . . . property held in trust (including . . . pension trusts )*) . . . ." § 3002(12) (emphasis added). This broad definition of "property" plainly encompasses the Sawafs' vested interest in their profits-haring pension account.[3]

But, under the terms of § 3205(a), the subject property interest must be "nonexempt." Section 3014(a) allows a debtor to exempt from collection any property defined by certain sections of the Bankruptcy Code not at issue here, or "any property that is exempt under Federal [nonbankruptcy] law . . . that is applicable on the date of the filing of the application for a remedy under this chapter. . . ." § 3014(a)(2)(A). The judgment debtor bears the burden of proving that he is entitled to the exemption. § 3014(b)(2). In the hearing before the magistrate judge, Dr. Sawaf did clearly claim that ERISA exempts his pension plan from garnishment. Although the evidence concerning whether Dr.

---

**3.** While the specific question whether such vested interests are "property" subject to garnishment under the FDCPA apparently has not been previously decided, there is directly analogous authority that such interests are "property" subject to levy on liens for unpaid taxes under I.R.C. § 6321. *Shanbaum v. United States,* 32 F.3d 180 (5th Cir.1994); *In re Evans,* 155 B.R. 234, 235 (Bankr.N.D.Okla.1993); *In re Jacobs,* 147 B.R. 106, 107–08 (Bankr.W.D.Pa.1992); *In re Perkins,* 134 B.R. 408, 411 (Bankr.E.D.Cal.1991); *In re Reed,* 127 B.R. 244, 247–48 (Bankr.D.Haw.1991).

Sawaf's pension plan actually qualified under § 206(d) of ERISA is conflicting, we presume for the purposes of this decision that it did. Consequently, we must consider whether the anti-alienation provision of ERISA exempts the Sawafs' funds from garnishment.

The source of the Sawafs' claimed exemption is § 206(d) of ERISA, 29 U.S.C. § 1056(d) (1988).[4] That section mandates that each qualified pension plan "shall provide that benefits provided under the plan may not be assigned or alienated." § 206(d)(1). Except for a provision allowing alienation of benefits to satisfy a Qualified Domestic Relations Order (QDRO), *see* § 206(d)(3)(A), § 206 mentions no other instances in which protected funds may be involuntarily alienated. The coordinate section of the Internal Revenue Code, I.R.C. § 401(a)(13), repeats substantially the same anti-alienation provisions as ERISA § 206(d). *See also* 26 C.F.R. § 1.401–13(b)(1) (1991) (restating anti-alienation requirement).

■ The Supreme Court has addressed the effect of § 206(d) in actions by private creditors and as to those "vigorously has enforced [§ 206(d)'s] prohibition on assignment or alienation of pension benefits." *See Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (bankruptcy trustee prohibited by § 206(d) from including in bankrupt's estate, debtor's interest in ERISA-protected plan); *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) (union prohibited by § 206(d) from imposing constructive trust on embezzling official's ERISA-protected pension benefits). But, neither *Patterson* nor *Guidry* addresses whether § 206(d) protects pension funds against IRS suits to collect on judgments arising out of unpaid tax assessments. Instead, both of those cases focused on private creditors' abilities to reach ERISA-qualified funds to satisfy their claims. When considered in the tax-collection context, we conclude that ERISA's protective provisions give way to the collection provisions of the Internal Revenue Code and the FDCPA.

Treasury Regulation § 1.401(a)–13(b) speaks directly to this point. The first subparagraph of subsection (b) recites the anti-alienation requirements common to ERISA and I.R.C. § 401(a)(13):

> (b) No assignment or alienation. (1) Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned ... alienated, or subject to attachment, garnishment, levy, execution, or other legal or equitable process.

§ 1.401(a)–13(b)(1). But the second subparagraph lists two exceptions to that rule:

> (2) Federal tax levies and judgments. A plan provision satisfying the [anti-alienation] requirements of subparagraph (1) of this paragraph shall not preclude the following:
>
> > (i) The enforcement of a Federal tax levy made pursuant to section 6331.
> >
> > (ii) *The collection by the United States on a judgment resulting from an unpaid tax assessment.*

§ 1.401(a)–13(b)(2) (emphasis added). The clear language of this treasury regulation therefore indicates that ERISA does not shield the Sawafs' pension fund from the IRS's suit to satisfy its tax judgment.

Contesting this result, the Sawafs argue that the regulation's second subparagraph is invalid. We disagree. Our analysis of a regulation's validity turns on whether it is legislative or interpretive. We have held that subparagraph (1) of § 1.401(a)–13(b) is a legislative regulation because the Secretary of Treasury issued it under the authority of 29 U.S.C. § 1202(c) (1988). *See General Motors Corp. v. Buha*, 623 F.2d 455, 462 (1980) (citing *Baker v. Otis Elevator Co.*, 609 F.2d 686, 690 (3d Cir.1979)). Because subparagraph (2) was issued under the same statutory authority as was subparagraph (1), it is likewise a legislative regulation.

---

4. The magistrate judge dealt with the Sawafs' claimed ERISA exemption via a discussion of Michigan law. Because we believe that the Sawafs' claimed ERISA exemption must stand or fall entirely on federal law grounds, we do not address any issue raised in the Report and Recommendation regarding the effect of Michigan law.

As such, we must give the regulation controlling weight unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Given Congress's paramount interest in ensuring the collection of taxes, a regulation excepting IRS collection actions from § 206(d)'s anti-alienation provision cannot be called arbitrary and capricious. *See United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983) (Congress has created "a formidable arsenal of collection tools ... to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting").

Furthermore, § 1.401(a)–13(b)(2) is not manifestly contrary to ERISA. It is true that the only explicit exception to § 206(d)'s anti-alienation provision concerns QDROs. *See* § 206(d)(3)(A). But, § 514(d)—ERISA's "savings" provision—opens the door for further exceptions by making ERISA subject to other federal law:

> Nothing in this subchapter [which includes § 206] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law.

29 U.S.C. § 1144(a). Other federal courts have construed this savings provision to mean that ERISA does not affect the IRS's authority to levy against pension funds under the collection provisions of the Internal Revenue Code. *See, e.g., Shanbaum v. United States,* 32 F.3d 180 (5th Cir.1994); *Ameritrust Co. v. Derakhshan,* 830 F.Supp. 406 (N.D.Ohio 1993); *In re Raihl,* 152 B.R. 615, 618 (Bankr.9th Cir.1993); *In re Jacobs,* 147 B.R. 106, 107–08 (Bankr.W.D.Pa.1992). More specifically, these courts have reasoned that allowing § 206(d)'s anti-alienation provision to bar IRS tax levies would "alter or amend" I.R.C. §§ 6321, 6331, and 6334, which authorize such levies. *See, e.g., Derakhshan,* 830 F.Supp. at 410. Therefore, § 1.401(a)–13(b)(2)(i), which excepts IRS tax levies brought under I.R.C. § 6331 from ERISA's anti-alienation provision, is consistent with the congressional intent expressed in ERISA's savings provision and the I.R.C.'s collection provisions.

Because the regulatory language allowing tax levies against ERISA-protected funds is valid, § 1.401(a)13(b)(2)(ii), which allows the IRS to collect unpaid tax judgments out of those same funds, must also be. The regulation treats tax judgment suits the same as tax levies, a similarity other courts have recognized. *See Retirement Fund Trust of Plumbing v. Franchise Tax,* 909 F.2d 1266, 1275 (9th Cir.1990) ("the judicial process of garnishment is functionally indistinguishable from the nonjudicial process of tax collection"). IRS suits to collect unpaid judgments, like tax levy actions, are specifically authorized by federal statute. Accordingly, allowing ERISA's anti-alienation provision to bar IRS access to pension funds would conflict with the express statutory grant of the FDCPA. Under ERISA's savings provision, such conflicts must be resolved in favor of the FDCPA. Additionally, the FDCPA's own savings provision suggests that it should trump inconsistent provisions of ERISA. Section 3003(c) lists several federal laws that the FDCPA should *not* be read to supersede or modify; that list does not include ERISA. *See* 28 U.S.C. § 3003(c)(1)–(10). Therefore, if Congress, in enacting the FDCPA, had intended it to be subordinate to ERISA, it easily could have included ERISA among the statutes that the FDCPA does not supersede. Finally, other language in § 3003(b) suggests this result: "[The FDCPA] shall not be construed to curtail or limit the right of the United States under any other Federal law ... to collect taxes or to collect any other amount collectible in the same manner as a tax." 28 U.S.C. § 3003(b).

Consequently, we conclude that Treasury Regulation § 1.401(a)–13(b)(2)(ii) is not "manifestly contrary" to ERISA or the I.R.C., and is valid. *See also Derakhshan,* 830 F.Supp. 406 (N.D.Ohio 1993) (upholding validity of § 1.401(a)–13(b)(2)(i) and (ii)); *In re Reed,* 127 B.R. at 247–48 (citing with approval all of § 1.401(a)–13(b)(2)). Because the Regulation is valid, it allows the IRS to collect the Sawafs' unpaid tax judgment out of their pension fund despite ERISA's anti-alienation provision. Accordingly, ERISA

does not "exempt" the Sawafs' interest in the pension fund from garnishment under the FDCPA. *See* 28 U.S.C. § 3205(a) (allowing garnishment of all nonexempt property interests); § 3014(a)(2)(A) (defining "exempt property").

## IV.

Having held that the IRS may properly garnish the Sawafs' pension fund to satisfy its judgment, we conclude that the district court's order issuing the IRS's requested writ of garnishment was proper. Accordingly, it is AFFIRMED.