T.C. Memo. 2007-208

UNITED STATES TAX COURT

CORRIE MILES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16887-05L.              Filed July 31, 2007.

<u>Thanasi K. Preovolos</u>, for petitioner.

<u>Karen Nicholson Sommers</u>, for respondent.

MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner seeks review of respondent's determination to proceed with collection of her unpaid 1997 and 1998 income tax liabilities.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The sole issue for decision is whether respondent may proceed with collection of petitioner's 1997 and 1998 income tax liabilities.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in California.

<u>The 1997 and 1998 Federal Tax Liens</u>

Petitioner and her former spouse, Gregory Romine (Mr. Romine), were married during the years in issue. They divorced in 2003. On September 16, 1998, petitioner and Mr. Romine filed a joint Federal income tax return for 1997 (the 1997 return). On the 1997 return, petitioner and Mr. Romine reported tax due of $254,400 and withholding tax credits of $24,700. No payment accompanied the return.[2]

On October 26, 1998, respondent assessed the tax reported on the 1997 return, interest, and additions to tax. On January 8, 1999, respondent filed a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (NFTL) with the San Diego

_____

[2] Petitioner and Mr. Romine paid $65,000 toward their 1997 tax liability on Jan. 19, 1999. A credit for overpayment of tax from Mr. Romine's 2002 taxes was also applied against the 1997 liability. Additionally, a payment of $175,964.37 was made toward the 1997 liability on Nov. 12, 2003.

County Recorder's office with respect to petitioner and Mr. Romine's 1997 income tax liability.

Petitioner and Mr. Romine filed a joint Federal income tax return for 1998 (the 1998 return) reporting tax due of $77,733 and withholding tax credits of $24,915. No payment accompanied that return.[3]

On June 7, 1999, respondent assessed the tax reported on the 1998 return, interest, and additions to tax. On July 3, 2000, respondent assessed additional tax of $54,368 pursuant to an agreement executed by petitioner, Mr. Romine, and respondent. On October 19, 1999, respondent filed an NFTL with the San Diego County Recorder's office with respect to petitioner and Mr. Romine's 1998 income tax liability.

Petitioner's Bankruptcy Proceedings

On May 19, 2003, petitioner filed a petition pursuant to chapter 7 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of California (the Bankruptcy Court). In connection with her bankruptcy case, petitioner filed a complaint to determine the dischargeability of her Federal income tax liabilities for the tax years 1996, 1997, and 1998. On July 22, 2003, the Bankruptcy Court entered a stipulation for entry of judgment and judgment thereon in which the Bankruptcy

---

[3] A payment of $741.48 was made toward the 1998 liability on May 24, 2002.

Court determined that petitioner's 1996, 1997, and 1998 tax liabilities would be discharged upon the entry of an order granting petitioner a discharge in her bankruptcy case. On August 25, 2003, the Bankruptcy Court entered an order of discharge in petitioner's bankruptcy case pursuant to 11 U.S.C. section 727 (2000).

## Petitioner's Individual Retirement Account

On the date she filed her chapter 7 bankruptcy petition, petitioner owned an individual retirement account (IRA) worth $142,545.90.

## Respondent's Collection Efforts

On December 4, 2003, Revenue Officer Cindy Alexander (Ms. Alexander) was assigned to investigate enforcement of the Federal tax liens with respect to petitioner's 1997 and 1998 tax liabilities. Ms. Alexander determined that the Federal tax liens for 1997 and 1998 attached to petitioner's IRA to the extent of its value of $142,545.90 on the date petitioner filed her petition in her bankruptcy case. On March 18, 2004, Ms. Alexander sent petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right To a Hearing with regard to petitioner's 1997 and 1998 tax liabilities (notice of intent to levy). On April 14, 2004, petitioner sent to respondent a Form 12153, Request for a Collection Due Process Hearing. In the Form 12153, petitioner stated that she disagreed with the collection

action proposed in respondent's notice of intent to levy and requested a hearing pursuant to section 6330(b).

Petitioner's Section 6330 Hearing

Petitioner's section 6330 hearing was assigned to Settlement Officer Cynthia Chadwell (Settlement Officer Chadwell). Petitioner's section 6330 hearing consisted of phone calls and a written correspondence between Settlement Officer Chadwell and petitioner's representatives that occurred between March and July of 1998. As discussed infra, petitioner raised two arguments during the hearing. Petitioner argued that respondent erroneously determined that the Federal tax liens continued to be valid against petitioner's interest in her IRA after her discharge from personal liability on the 1997 and 1998 income tax liabilities in her chapter 7 bankruptcy case. Petitioner also argued that respondent erroneously determined that the Federal tax liens remained valid after petitioner allegedly transferred the funds in her IRA into a pension plan administered by petitioner's new employer. Settlement Officer Chadwell determined to proceed with the proposed levy, and respondent issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 on July 29, 2005.

## Discussion

Section 6331(a) provides that, if any person liable to pay any tax neglects or refuses to do so within 10 days after notice and demand, the Secretary generally can collect such tax by levy upon all property and rights to property belonging to such person or on property on which there is a Federal tax lien. Pursuant to section 6331(d), the Secretary is required to give the taxpayer notice of his intent to levy and within that notice must describe the administrative review available to the taxpayer before proceeding with the levy. See also sec. 6330(a).

Section 6330(b) describes the administrative review process, providing that a taxpayer can request an Appeals hearing (section 6330 hearing) with regard to a levy notice.[4] Pursuant to section 6330(c)(2)(A), a taxpayer may raise at the section 6330 hearing any relevant issue with regard to the Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and alternative means of collection. Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000).

---

[4] Although the NFTLs were filed before the effective date of secs. 6320 and 6330, which apply to collection actions initiated after Jan. 18, 1999, the collection due process procedures apply to the matter before us because the levy notice was issued after that date. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3401, 112 Stat. 746; Parker v. Commissioner, 117 T.C. 63 (2001).

When the Commissioner issues a determination regarding a disputed collection action, section 6330(d) permits a taxpayer to seek review in this Court.  If the underlying tax liability is properly at issue, we review that issue de novo.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181. If the validity of the underlying tax liability is not at issue, we review the Commissioner's determination for abuse of discretion.  Sego v. Commissioner, supra at 610.

We have previously held that this Court has jurisdiction in a levy proceeding instituted pursuant to section 6330(d)(1) to determine whether a taxpayer's unpaid tax liabilities were discharged in bankruptcy.  Swanson v. Commissioner, 121 T.C. 111, 120-121 (2003); Washington v. Commissioner, 120 T.C. 114, 120-121 (2003).  In Washington, we did not specifically address the appropriate standard of review to apply when determining whether a taxpayer's tax liabilities were discharged in bankruptcy where, as in the matter before us, the taxpayer has not received a notice of deficiency.  In this case, the parties have stipulated that all of the evidence contained in the trial record was available to Settlement Officer Chadwell in making her determination.  For the reasons discussed infra, our review of that evidence causes us to sustain Settlement Officer Chadwell's determination to proceed with collection whether we apply an

abuse of discretion or a de novo standard of review. Petitioner bears the burden of proof. See Rule 142(a).

In her petition, petitioner appears to argue that respondent erred in determining that the Federal tax liens for petitioner's 1997 and 1998 income tax liabilities were valid at the time they were filed. During petitioner's section 6330 hearing, petitioner's counsel advised respondent that "[we] do not disagree that the above mentioned [sic] liens are valid liens". Moreover, at trial, petitioner failed to introduce any evidence or raise any specific argument supporting her contention that the Federal tax liens were invalid as filed. We conclude that petitioner has abandoned that issue. Petzoldt v. Commissioner, 92 T.C. 661, 683-687 (1989).

Petitioner further contends that respondent erroneously determined that the Federal tax liens continued to be valid against petitioner's interest in her IRA after her discharge from personal liability on the 1997 and 1998 income tax liabilities in her chapter 7 bankruptcy case. We have specifically held that a discharge from personal liability in a chapter 7 bankruptcy case does not extinguish a prepetition Federal tax lien. Iannone v. Commissioner, 122 T.C. 287 (2004); see also 11 U.S.C. sec. 522(c)(2)(B) (providing that exempt property remains subject to properly filed tax liens even though the underlying tax claim may have been discharged); Connor v. United States, 27 F.3d 365, 366

(9th Cir. 1994) ("A preexisting lien on property, however, remains enforceable against that property even after an individual's personal liability has been discharged.").

Petitioner also contends that respondent erroneously determined that the Federal tax liens remained valid after petitioner allegedly transferred the funds in her IRA into a pension plan administered by petitioner's employer, Chapters, Inc. Petitioner contends that she rolled over her IRA into the pension plan, which petitioner alleges was established under the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, sec. 2003, 88 Stat. 871.

At both her section 6330 hearing and at trial, petitioner failed to produce any evidence to support her contention that she transferred her IRA funds into an ERISA-qualified pension plan. If a party fails to introduce evidence within that party's possession, we may presume in some circumstances that, if produced, the evidence would be unfavorable to that party. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). This is true where the party that does not produce the evidence has the burden of proof or the other party has established a prima facie case. Id. As noted supra, petitioner bears the burden of proof in the matter before us. Petitioner repeatedly refused to supply respondent with any information regarding the account, its

status, or its location.[5]  We therefore conclude that no evidence in petitioner's possession would establish that petitioner transferred the funds in her IRA into an ERISA-qualified pension plan.

Additionally, petitioner's argument that the lien on the IRA was extinguished when petitioner transferred the funds in the IRA into an ERISA-qualified pension plan is incorrect.  As respondent correctly notes:  "The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere'."  United States v. Bess, 357 U.S. 51, 57 (1958) (quoting Burton v. Smith, 38 U.S. 464, 483 (1839)); see also Michigan v. United States, 317 U.S. 338, 340 (1943); United States v. Morrison, 29 U.S. 124 (1830).

Petitioner also argues that the antialienation provisions of ERISA prevent respondent from levying against petitioner's alleged interest in the ERISA-qualified pension plan.  Numerous courts--including, on several occasions, the U.S. Court of Appeals for the Ninth Circuit (to which this case is

---

[5]  For example, on Mar. 9, 2005, in response to a letter from respondent requesting information about petitioner's IRA funds, petitioner's counsel, Mr. Preovolos, informed respondent only that "Currently the asset that you seek to levy is unavailable."  The record also indicates that Chapters, Inc., the employer that allegedly administered the ERISA-qualified plan, was formed in 2004, while petitioner was disputing the liens on her IRA before respondent.  The mailing address for Chapters, Inc., appears to be petitioner's personal mailing address.

appealable)--have expressly rejected the argument that ERISA antialienation provisions preclude enforcement of a Federal tax levy. See, e.g., <u>United States v. Novak</u>, 476 F.3d 1041 (9th Cir. 2007); <u>United States IRS v. Snyder</u>, 343 F.3d 1171, 1179 (9th Cir. 2003); <u>McIntyre v. United States</u>, 222 F.3d 655, 660 (9th Cir. 2000); <u>Anderson v. United States</u>, 149 Bankr. 591, 595 (B.A.P. 9th Cir. 1992); see also <u>United States v. Sawaf</u>, 74 F.3d 119 (6th Cir. 1996); <u>Shanbaum v. United States</u>, 32 F.3d 180 (5th Cir. 1994).

Finally, petitioner argues that her alleged interest in the ERISA-qualified plan does not constitute "property [or] rights to property" for the purpose of section 6321 and thus is not subject to lien or levy. We need not pass on the merits of this argument: As noted <u>supra</u>, at the section 6330 hearing and at trial, petitioner failed to introduce any evidence to support her claim that she transferred the funds in her IRA into an ERISA-qualified pension plan. We therefore conclude that no evidence in petitioner's control would establish that petitioner's interest does not remain subject to the Federal tax liens. See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, <u>supra</u>.

Petitioner has failed to raise a spousal defense, make a valid challenge to the appropriateness of respondent's intended collection, or offer alternative means of collection. We therefore uphold respondent's determination to proceed with collection of petitioner's 1997 and 1998 income tax liabilities.

In reaching all of our holdings herein, we have considered all the parties' arguments, and, to the extent not herein discussed, we conclude that they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.