UNITED STATES of America, Appellant,

v.

HECLA MINING COMPANY, a corporation, Appellee.

No. 17064.

United States Court of Appeals Ninth Circuit.

Nov. 14, 1961.

Rehearing Denied Jan. 31, 1962.

Second Petition for Rehearing Denied March 15, 1962.

Certiorari Denied June 11, 1962.

See 82 S.Ct. 1555.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Marselli and Daniel K. Mayers, Attys., Dept. of Justice, Washington, D. C., for appellant; Kenneth G. Bergquist, U. S. Atty., Boise, Idaho, of counsel.

Charles E. Horning, Wallace, Idaho, Valentine Brookes and Paul E. Anderson, San Francisco, Cal., for appellee; Kent & Brookes, San Francisco, Cal., of counsel.

Before HAMLEY and KOELSCH, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge.

Appellee taxpayer seeks recovery of interest in the amount of $34,118.38 assessed and paid with respect to corporate income tax deficiencies for the years 1942 to 1945 inclusive. The question presented is whether interest on income tax deficiencies and interest on an excess profits tax overassessment should be computed separately, as appellant contends, or the amounts of the deficiencies and overassessment offset against each other and the interest computed on the resulting net amount, as appellee contends, and as the district court held.

The facts are undisputed. On February 19, 1946, taxpayer filed a claim for refund of 1942 excess profits taxes, and on July 28, 1949, filed an amended claim, based upon a carry-back to 1942 of unused excess profits credits for the taxable years 1943 and 1944. The revenue agent, who audited taxpayer's income and excess profits tax returns for the years 1942 to

1945 inclusive, filed his report on July 18, 1949, finding deficiencies in income taxes for each of the four years and large unused excess profits credits for the years 1943 and 1944.

Following negotiations, the Internal Revenue Service and taxpayer on December 12, 1952, agreed upon the amounts of the income and excess profits tax liabilities as follows:

| Year | Income Tax Deficiencies | Excess Profits Tax Overpayment | Net Amount Owing |
|---|---|---|---|
| 1942 | $122,498.66 | ($276,362.86) | ($153,864.20) |
| 1943 | 16,930.00 | | 16,930.00 |
| 1944 | 89,166.02 | | 89,166.02 |
| 1945 | 109,550.36 | | 109,550.36 |
| | $338,145.04 | ($276,362.86) | $ 61,782.18 |
| Post War Credit Reduction | | | 27,636.29 |
| | | | $ 89,418.37 |

Interest on income and excess profits tax deficiencies were assessed against appellee as follows:

| Year | Deficiency Per Books | Interest Assessed | Delinquency Interest | Total Interest |
|---|---|---|---|---|
| 1942 IT | $122,498.66 | $ 25,085.33 [1] | $ 271.42 | |
| 1942 EPT | 57,460.01 | 3,447.60 [1] | 37.30 | |
| 1943 IT | 16,930.00 | 8,971.74 | 97.07 | |
| 1944 IT | 89,166.02 | 41,901.92 | 454.38 | |
| 1945 IT | 109,550.36 | 44,908.14 | 485.90 | |
| | | $124,314.73 | $1,346.07 | $125,660.80 |

Interest on the overassessment of excess profits tax was computed by the Commissioner as follows:

| | | Interest From | To | Amount Interest |
|---|---|---|---|---|
| Overassessment | $276,362.86 | | | |
| Post War Credit-Reduction | 27,636.29 | 7/28/49 | 12/31/45 | None |
| Remainder | 248,726.57 | | | |
| Interest on | 245,278.97 | 7/28/49 | 1/14/53 | $50,967.62 |
| Interest on | 3,447.60 | 7/28/49 | 5/ 1/53 | 777.41 [2] |
| | | | Total | $51,745.03 |

1. Interest (with minor adjustments) was computed on the 1942 income and excess profits tax deficiencies from July 28, 1949, the date the claim for unused excess profits credits was filed.

2. July 28, 1949, was the date the claim for carry-back was filed; January 14, 1953, the 30th day after waiver; and May 1, 1953, the date of assessment of deficiency interest against which this amount was credited.

The interest of $51,745.03 was computed pursuant to Section 3771(e) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 3771(e);[3] the interest on the income tax deficiencies for 1943, 1944 and 1945, pursuant to section 292(a);[4] and the interest on the 1942 income tax deficiency pursuant to section 292(c).[5]

On June 25, 1953, taxpayer received a check from the United States for $51,-745.03. On July 7, 1953, taxpayer paid the United States the sum of $89,418.37, representing the net amount of the principal owing, and on July 29, 1953, paid $125,660.80 interest. Of this amount, $34,118.38 is in dispute, computed as follows:

| | |
|---|---|
| Interest paid by taxpayer on deficiencies | $125,660.80 |
| Interest paid to taxpayer on overassessment | 51,745.03 |
| | $ 73,915.77 |
| Interest on $89,418.39 | 39,797.39 |
| Amount in dispute | $ 34,118.38 |

Appellee has conceded its liability for interest upon the deficiency in excess

profits taxes arising from standard issue adjustments for 1942 from the due date of the 1942 return (March 15, 1943) to the due date of the 1943 return (March 15, 1944), when the unused excess profits credit for the taxable year 1943 arose. Appellant has not sought to collect interest upon the 1942 excess profits tax deficiency based on standard issue adjustments for any period after March 15, 1944. The trial court held that the Commissioner erroneously failed to permit offset of the overassessment of excess profits tax against the income tax deficiencies for 1943, 1944 and 1945 as of the due dates thereof. Had he done so, the amount of interest would have been reduced by $34,118.38. Judgment was entered for that amount.

The question of whether the offset was properly permitted in the computation of interest depends primarily upon when the excess profits tax overassessment for 1942 came into existence and was available for use as an offset. The trial court found that the offsetting overpayments arose on the dates the returns were filed reporting unused excess profits credits to

3. Internal Revenue Code of 1939: § 3771 Interest on Overpayments. "(e) (as added by § 153(d), Revenue Act of 1942, c. 619, 56 Stat. 798, 847) *Claims based on carry-back of loss or credit.*—If the Commissioner determines that any part of an overpayment is attributable to the inclusion in computing the net operating loss deduction for the taxable year of any part of the net operating loss for a succeeding taxable year or to the inclusion in computing the unused excess profits credit adjustment for the taxable year of any part of the unused excess profits credit for a succeeding taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period before the filing of a claim for credit or refund of such part of the overpayment or the filing of a petition with the Tax Court, whichever is earlier."

4. Section 292(a) (as amended) provides in pertinent part that, "Interest upon the amount determined as a deficiency shall be assessed at the same time as the deficiency, shall be paid upon notice and demand from the collector, and shall be collected as a part of the tax * * * from the date prescribed for the payment of the tax * * * to the date the de-

ficiency is assessed, or, in the case of a waiver under section 272(d), to the thirtieth day after the filing of such waiver or to the date the deficiency is assessed whichever is the earlier. If any portion of the deficiency assessed is not to be collected by reason of a prior satisfaction, in whole or in part, of the tax, proper adjustment shall be made with respect to the interest on such portion." (26 U.S.C. 1952 Ed. § 292)

5. Section 292(c) (as added by Section 6(a) of the Tax Adjustment Act of 1945, c. 340, 59 Stat. 517) provides in pertinent part that, "If any part of a deficiency is determined by the Commissioner to be attributable (A) to a carryback to which an overpayment described in section 3771(e) * * * or (B) to an error in the amount or effect of a carry-back which resulted in a credit or refund of an overpayment with interest computed pursuant to section 3771(e) * * * no interest shall be assessed or paid under subsection (a) with respect to such part of the deficiency for any period during which interest was not allowed with respect to such overpayment * * *." (26 U.S.C. 1952 Ed. § 292)

be carried back to 1942 "to produce the overpayment in excess profits tax for that year". Appellee accordingly contends that this resulted in a "credit" with the Government, which was available when the income tax deficiencies came into being.

Appellant contends that the excess profits tax overassessment did not come into existence retroactively to the dates of the returns, and that in permitting the offset in the computation of interest, the trial court (a) failed to give effect to the specific provision of section 3771(e) (Footnote 3), prohibiting the allowance of interest, on excess profits tax overassessments attributable to unused excess profits credit carry-backs, for any period prior to the filing of the claim asserting the carry-back, and (b) failed to give effect to the provisions of section 292(a) and 292(c) with respect to the allowance of interest on income tax deficiencies under the circumstances of this case.

Under Section 3770(a)(3) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3770(a)(3), the date of allowance of a refund or credit is the date the Commissioner signs the schedule of overassessment. The schedule of overassessment of the 1942 excess profits tax in this case was signed May 1, 1953, although the credit for the assessment was made available as of January 14, 1953, the 30th day after the filing of the assessment.

Section 3771 deals with "Interest on overpayments". It provides generally that interest shall be allowed and paid from the "date of the overpayment"; but § 3771(e) specifically provides that, "If the Commissioner determines that any part of an overpayment is attributable to * * * (an) unused excess profits credit for a succeeding taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any

period before the filing of a claim for credit or refund * * * ". This section is a part of the Revenue Act of 1942, which authorized carry-backs "to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis" and to permit a "taxpayer to set off its lean years against its lush years, and to strike something like an average taxable * * * year". Libson Shops, Inc. v. Koehler, 1957, 353 U.S. 382, 386, 77 S.Ct. 990, 993, 1 L.Ed.2d 924.

After referring to a carry-back as "an exceptional relief measure in that it permits a departure from the basic annual accounting rule", the Supreme Court in Bulova Watch Co. v. United States, 1961, 365 U.S. 753, 759, 81 S.Ct. 864, 868, 6 L.Ed.2d 72, said:

"The significant feature of a carry-back is that it permits an adjustment of an earlier liability upon the basis of subsequent events. It contemplates that the initial tax obligation was not incorrectly or mistakenly imposed but was actually due, but that an adjustment may be made upon the basis of the taxpayer's gain or loss in the succeeding year or years, and it is evident from the very terms of § 3771(e) that Congress thought it would be unfair to the Government to require it to pay interest on a claim brought about by such a retroactive adjustment prior to the time when the taxpayer took affirmative steps to bring home to the Commissioner that he is now in position to claim, and claims, a readjustment of his past admittedly correct tax liability. Section 3771 (e) does not, of course, deny interest on carry-back refunds. It only prohibits the accrual of interest prior to the time the taxpayer's claim therefor is filed with, and thus made known to, the Commissioner." [6]

6. The opinion quotes from the report of the Senate Finance Committee on the bill which became § 3771(e) (S.Rep. No. 1631, 77th Cong., 2d Sess., pp. 123–4) as showing "Congress' purpose to deny interest on carry-back refunds for any period prior to the time they could be determined, and also to prevent, through delay in the presentation of claims, the accumulation of interest after that date and prior to the filing of the claim".

Appellee contends, however, that it is not seeking to obtain interest on an overpayment contrary to § 3771(e) but rather is questioning appellant's right to "collect interest on a phantom deficiency". It is conceded that if appellee sought to recover interest upon the overpayment, § 3771 (e) would deny interest for any period prior to July 28, 1949. It is argued that this section does not "prevent the overpayment of the tax itself being offset against another deficiency in tax in such manner as to prevent the other deficiency from accruing interest".

■■ It is true, as appellee contends, that Bulova Watch did not deal with offsets. It is pertinent, however, in determining when the overpayment became available as an offset. The only logical conclusion to draw from § 3771(e), as construed by the Supreme Court in Bulova Watch, is that the overpayment did not become available as an offset until the taxpayer filed his claim for refund. Until the carry-back was allowed, there was no obligation owing from the Government since the excess profits tax was lawfully and correctly assessed. The obligation arose by reason of an adjustment and carry-back of the overpayment in subsequent years, and no overpayment may be deemed made until the time designated for the accrual of interest through the filing of the claim.[7]

This conclusion was implicitly recognized in Manning v. Seeley Tube & Box Co., 1950, 338 U.S. 561, 70 S.Ct. 386, 389, 94 L.Ed. 346. In that case the Commissioner had assessed deficiencies in the 1941 taxes of a corporate taxpayer, with interest from the date the tax was properly due to the assessment date. In 1944 the taxpayer filed its return for the fiscal period from October 1, 1942, to September 30, 1943, showing a net operating loss for that year. This loss when carried

back was sufficient to abate entirely the corporation's tax liability for 1941. The taxpayer filed claims for a refund of part of the 1941 tax which had been paid and for abatement of the assessed deficiency and interest. The Commissioner abated the deficiency but refused to refund all that had been paid, retaining an amount equal to the interest which had been assessed on the deficiency. The corporation then sued the Collector for that interest. In holding that the interest was properly withheld by the Collector, the Court said:

> " * * * The subsequent cancellation of the duty to pay this assessed deficiency does not cancel in like manner the duty to pay the interest on that deficiency. From the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax. (Citing cases.) For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States. *The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period.* In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government." (Emphasis supplied.)

It is clear from this decision that the obligation to the taxpayer did not arise by reason of the operating loss in itself. Through statutory procedures a validly assessed deficiency was subsequently

---

7. Under the 1954 Code the overpayment resulting in a carry-back is "deemed not to have been made prior to the close of the taxable year" giving rise to the carry-back. Int.Rev.Code of 1954 § 6611(f), 26 U.S.C.A. § 6611(f). As the Supreme Court observed in Bulova Watch, this provision was clearly a change from existing law and was so recognized by Congress in the relevant committee report, H.R. No. 1337, 83d Cong., 2d Sess., p. A418. (365 U.S. at p. 761, 81 S.Ct. at p. 869)

abated by the carry-back of the loss. We can see no logical or valid distinction between the subsequent *avoidance* of the debt of the taxpayer through carry-back of an operating loss, and a subsequent *reduction* in the debt of the taxpayer through application of an overpayment. In either event the obligation is not owing or available as an offset until the right to interest is perfected through filing the claim for refund.

Manning v. Seeley Tube & Box Co. also recognized that the abatement of interest would "place a premium on failure to conform diligently with the law". The Court continued: "For then a taxpayer who did not pay his taxes on time would receive the full use of the tax funds for the intervening period, while the taxpayer who did obey the statutory mandate and pay his lawful taxes promptly would be prohibited by § 3771(e) from having the use of the money for that period. We cannot approve such a result." (338 U.S. at 568, 70 S.Ct. at 390) So here, the taxpayer who underpaid his taxes, with a resulting deficiency, would enjoy an advantage over the taxpayer who paid the correct amount.

■ Appellee also relies upon the 1944 amendment to section 292(a) providing that, "If any portion of the deficiency assessed is not to be collected by reason of a prior satisfaction, in whole or in part, of the tax, proper adjustment shall be made with respect to the interest on such portion." The "prior satisfaction" referred to in this amendment is a prior satisfaction of "the tax", i. e. the tax liability for the particular year with respect to which interest on a deficiency is authorized.

This amendment was added in 1944 following the enactment of the Current Tax Payment Act of 1943 (c. 120, 57 Stat. 126) providing for estimated tax payments and tax withholding at the source of wages.[8]  It was recognized that "under the system of tax collection which now obtains with respect to individuals, it is apparent that in certain cases the estimated tax payment and the tax withheld at the source may exceed the tax shown by the taxpayer upon his return".[9]  The addition of the last sentence in section 292(a) was specifically explained in the Senate Report as follows:

"Subsection (c) of section 14 amends code section 292(a), relating to interest on deficiencies, to expressly provide that if any portion of the deficiency assessed is not to be collected by reason of a prior satisfaction, in whole or in part, of the tax, proper adjustment shall be made with respect to the interest on such portion for the period subsequent to the proper payment thereof. This amendment is necessitated by the change in the system of tax collection as the result of which there may be an assessment of a deficiency even though the full amount of the tax has already been collected." [10]

The carry-back to 1942 of unused excess profits credits does not constitute a "prior satisfaction" of 1943, 1944 and 1945 income tax deficiencies, within the meaning of § 292(a).

As noted supra, the interest on the income tax deficiency for 1942 was computed from the date the amended claim was filed, pursuant to § 292(c).[11]  This section, added by the Tax Adjustment Act of 1945, specifically provides that in the case of a deficiency resulting from an overpayment attributable to an unused excess profits carry-back, no interest shall be allowed "with respect to such part of the deficiency for any period during which interest was not allowed with respect to such overpayment".[12]

■ It is clear from the legislative history of the bill which became the Tax

---

8. See discussion of this amendment in S. Rep. No. 885, 78th Cong., 2d Sess., pp. 37–41 (1944 Cum.Bull., 858, 887–889).

9. S.Rep. No. 885, supra, p. 38 (1944 Cum. Bull., 887).

10. S.Rep. No. 885, supra, p. 41 (1944 Cum. Bull., 889).

11. See Footnote 5.

12. Here the 1942 income tax deficiency was attributable to the excess profits tax overpayment resulting from the carry-

Adjustment Act of 1945 that it was the intent of Congress, with respect to any *deficiency attributable to overpayments resulting from carry-backs*, to eliminate interest for any period during which interest was not allowed for the overpayments under § 3771(e).[13] The application of the amendment clearly is limited to deficiencies attributable to overpayments resulting from carry-backs and may not be extended to income tax deficiencies resulting from "standard issue" adjustments not related to the carry-backs.

If appellee were correct in its contention that the overassessment of the excess profits tax could be offset against income tax deficiencies for all prior years, the amendment incorporated in § 292(c) would have been unnecessary. We cannot assume that Congress did a useless act. The fact that Congress saw fit to enact this amendment confirms our conclusion that there may be no offset in the computation of interest.

The cases upon which appellee relies are distinguishable. In all of them there was a definite obligation owing from the United States at the time of the claimed offset, or a deposit of funds upon which interest would be allowed. None of them involve a statutory provision such as § 3771(e), expressly prohibiting the allowance of interest for any period prior to the filing of the claim asserting the carry-back.

Appellee argues that American Propellor & Mfg. Co. v. United States, 1937, 300 U.S. 475, 57 S.Ct. 521, 523, 81 L.Ed. 751, is controlling. In that case the plaintiff instituted suit in the Court of Claims to recover an amount due from the Government under certain contracts. The Government counterclaimed for a deficiency income and excess profits tax assessment. The Supreme Court pointed out that under the findings the Government was indebted in 1924 to petitioner in the sum of $119,413.04, against which there was at the same time a just counterclaim of $82,701.29, "so that if the account had been adjusted at that time instead of 12 years later, the government would have been obliged to pay petitioner the difference between these two sums, or $36,711.75". It was held that the inequity of allowing the Government interest for 12 years thereafter so as to bring the claimant in debt to the Government in the sum of over $21,000.00 was so gross as to be shocking.

In American Propellor Co. both obligations were owing "at the same time" in 1924. Here there was no obligation owing from the United States on the date of the claimed offset. Nor did the subsequent obligation arise by reason of an incorrect or mistakenly imposed tax, but

backs. The income tax deficiencies for 1943, 1944 and 1945 were not attributable to the carry-backs, but arose by reason of "standard issue" adjustments, unrelated to any carry-back.

13. H.Rep. No. 849, 79th Cong., 1st Sess., pp. 33–35 (1945 Cum.Bull., pp. 566, 588–589) on H.R. 3633, which became the Tax Adjustment Act of 1945, c. 340, 59 Stat. 517, reads in part:

"Under present law interest on an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back may be allowed only from the date of the filing of a claim for credit or refund of such overpayment or from the date of the filing of a petition with The Tax Court, whichever is earlier. Overpayments in one tax, however, frequently result in deficiencies in another tax. Thus, an overpayment of

excess profits tax generally results in a deficiency in income tax. Interest on such deficiency, under present law, is payable from the date prescribed for the payment of the tax or, if the tax is paid in installments, from the date prescribed for the payment of the first installment.

\*    \*    \*    \*    \*

"To correct the above situation, subsection (a) of section 6 of the bill adds a new subsection (c) to section 292 of the Internal Revenue Code. Such new subsection (c) provides that if any part of a deficiency in tax results from an overpayment or a decrease, attributable to a net operating loss carry-back or to an unused excess profits credit carry-back, in any other tax, no interest shall be assessed or paid with respect to such part of the deficiency for any period during which interest was not allowed with respect to such overpayment or decrease."

solely by reason of a retroactive adjustment permitted by statute, and with a specific statutory provision that interest should not be paid before the filing of the claim. The overpayment did not come into existence as an obligation of the United States for interest purposes until the amended claim was filed on July 28, 1949.

Judgment reversed.

On Petition of Appellee for Rehearing.

Appellee has filed a petition for rehearing. While we have concluded that the court reached the correct result in its original opinion and that the petition should be denied, we do deem some modification and clarification of the opinion advisable.

Appellee contends that it became entitled to the overpayment as a matter of *substantive* right when the taxable years ended with an unused credit in existence and that accordingly the overpayment at that time became available as an offsetting obligation; that section 3771(e) relates only to the date when *interest* begins running and does not determine when the substantive right to the refund arose; and that in cases in which the Government occupied the position of appellee here, the "Government was rescued by sympathetic courts from the inequity of the statutes".

Appellee relies upon cases [1] arising under the Internal Revenue Act of 1926,[2] contending that the statutory framework then existing was the exact converse of that involved here. Interest on deficiencies ran from the date of assessment, whereas interest on refunds ran from the date of overpayment. Cases arose where the taxpayer was entitled to a refund over a certain period for which there was an unassessed deficiency. It was held that the deficiency must be offset against the overpayment, and interest was allowed the taxpayer only on the net balance. In effect a tax deficiency was allowed as a set-off as of the due date of the tax return, notwithstanding the statutory interest provisions.

We cannot agree with appellee that this case presents the exact converse of that situation. The Commissioner, asserting a tax deficiency under the Internal Revenue Act of 1926, was not in the position of appellee, claiming an overpayment by reason of carry-back provisions of the 1939 Internal Revenue Code. Deficiencies assessed under the 1926 Act were for taxes regularly due and imposed for particular years, unaffected by subsequent and antecedent years. A taxpayer presumed familiar with the law and held accountable to its provisions could be expected to know that a deficiency existed. The overpayments referred to in section 284(a), supra, were those which arose by reason of taxes erroneously or illegally assessed and consequently bore interest from the date the tax was overpaid.[3]

A carry-back does not arise by reason of an erroneous assessment or illegally collected tax. "An exceptional relief measure", it permits "an adjustment of an earlier liability upon the basis of subsequent events".[4] Unlike the deficiencies existing under the Internal Revenue Act

---

1. McCarl v. United States, 1930, 59 App. D.C. 362, 42 F.2d 346; Huwe v. Ohmer Fare Register Co., 6 Cir. 1932, 61 F.2d 721; Lucas v. United States, 1930, 59 App.D.C. 389, 45 F.2d 291; Standard Oil Co. [Indiana] v. United States, 1934, 5 F.Supp. 976, 987, 78 Ct.Cl. 714; and Tull & Gibbs v. United States, 9 Cir. 1931, 48 F.2d 148.

2. The cases deal generally with controversies under Section 284(a), Internal Revenue Act of 1926 (44 Stat. 66) 26 U.S. C.A. Int.Rev.Acts which provided:
   "Where there has been an overpayment of any income, war-profits, or excess-prof-

its tax imposed by this Act * * * the amount of such overpayment shall, except as provided in subdivision (d), be credited against any income, war-profits, or excess profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer."

3. Section 1116, Internal Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts.

4. Bulova Watch Co. v. United States, 1961, 365 U.S. 753, 759, 81 S.Ct. 864, 6 L. Ed.2d 72.

of 1926, the Government cannot be presumed to know of the existence of overpayments due to carry-back of unused excess profits credits, made possible by circumstances peculiarly within the knowledge of the taxpayer, until such time as appropriate steps are taken to bring the overpayment to the attention of the Commissioner. Hence, the interest provision embodied in section 3771 (e) has more significance than that relating to tax deficiencies under the Internal Revenue Act of 1926.

It is true, of course, that section 3771 (e) does not determine substantive rights to a refund. It does determine when interest on an overpayment shall begin. This court may not decide the questions of offset and interest on equitable grounds contrary to the statutory provisions. In determining a comparable interest question in Babcock & Wilcox Co. v. Pedrick, 2 Cir. 1954, 212 F.2d 645, the court pointed out that equity alone is a "dangerous ground for the testing of taxes". The court continued: " 'The Internal Revenue Code, not general equitable principle, is the mainspring of the Board's jurisdiction.' C.I.R. v. Gooch Milling & Elevator Co., 320 U.S. 418, 422, 64 S.Ct. 184, 186, 88 L.Ed. 139. And so we must turn to the statutes."

We are satisfied from a study of the applicable statutes and legislative history that the substantive right to claim a refund for an over payment resulting from a carry-back is not accorded the status of an obligation which may be netted against deficiencies. "The excess profits tax and the ordinary income tax are not one, but are made and levied in separate and distinct manner. They are imposed by separate legislation separately enacted." Babcock & Wilcox Co. v. Pedrick, supra, 212 F.2d at 649. They cannot be treated as one tax for the purpose of computing interest. W. G. Duncan Coal Co. v. Glenn, D.Ky.1952, 120 F.Supp. 948.

Section 3771(e) prohibits the allowance of interest on the overpayment for any period prior to the date of filing a refund claim (or petition with the Tax Court). Under section 292(a), interest upon the deficiency ran from the date prescribed for the payment of the tax to the date the deficiency was assessed. That these sections were meant to be applied literally and separately is confirmed by the Tax Adjustment Act of 1945 which added subsection (c) to section 292, discussed in our original opinion.

The relief afforded by section 292(c) is limited to any deficiency attributable to overpayment resulting from carry-backs and may not be extended to income tax deficiencies resulting from "standard issue" adjustments not related to the carry-back. It does not provide for interest on overpayments prior to application for refund, but rather that interest shall not be allowed on the deficiency in a particular situation where an adjustment was deemed necessary. Nor does any applicable statute provide for a netting of principal amounts before interest is computed. The inference is inescapable that except in the situation governed by 292(c), section 292(a) is controlling with respect to interest on deficiencies, and section 3771(e) is controlling with respect to interest on overpayments resulting from carry-backs. Section 292 (c) is in effect a Congressional declaration and adjustment of the equities, leaving no room for discretion in this area.

We do not hold that the substantive right to a refund arises only when procedural requirements are met. We do hold that the interest provisions with respect to standard issue tax deficiencies and overpayments resulting from carry-backs of unused excess profits credits must be applied literally and separately to effect the result which Congress intended.

The original opinion is modified by this supplemental opinion, and the petition for rehearing is denied.