**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TAPROOT ADMINISTRATIVE SERVICES,
INC.,
    *Petitioner-Appellant,*

v.

COMMISSIONER OF INTERNAL
REVENUE,
    *Respondent-Appellee.*

No. 10-70892

Tax Ct. No.
15396-07

OPINION

Appeal from a Decision of the United States Tax Court

Argued and Submitted
November 9, 2011—Pasadena, California

Filed March 21, 2012

Before: Mary M. Schroeder and Stephen Reinhardt,
Circuit Judges, and Henry E. Hudson, District Judge.*

Opinion by Judge Hudson

*The Honorable Henry E. Hudson, United States District Judge for the
Eastern District of Virginia, sitting by designation.

## COUNSEL

Steven R. Mather (argued), Kajan Mather and Barish, Beverly Hills, California, for the petitioner-appellant.

John A. DiCicco, Acting Assistant Attorney General; Richard Farber and John A. Dudeck (argued), Attorneys; U.S. Department of Justice, Tax Division, Washington, D.C., for the respondent-appellee.

## OPINION

HUDSON, District Judge:

Under the Internal Revenue Code, certain eligible corporations may elect S corporation status, thereby acting as pass-through entities for federal taxation purposes. The rules governing eligibility to elect S corporation status restrict various attributes those corporations may have, including the number of shareholders, the classes of stock issued, and the types of shareholders. The single question presented is whether a corporate taxpayer is ineligible for S corporation status, and therefore must be taxed as a C corporation, because its sole shareholder is a custodial Roth Individual Retirement Account (Roth IRA). Taproot Administrative Services, Inc. (Taproot) contends that a Roth IRA cannot be distinguished from its individual owner under a reasonable interpretation of the governing statute. Adhering to this construction, Taproot thus argues that it satisfies the S corporation requirements. For the reasons that follow, we disagree with Taproot and affirm the decision of the Tax Court.

I.

Qualifying small business corporations may affirmatively elect S corporation status for federal income tax purposes. I.R.C. §§ 1361(a), 1362(a)(1) (2006). Under I.R.C. §§ 1363(a) and 1366(a)(1)(A), an S corporation's "profits pass through directly to its shareholders on a pro rata basis and are reported on the shareholders' individual tax returns." *Gitlitz v. Comm'r*, 531 U.S. 206, 209 (2001) (citing I.R.C. § 1366(a)(1)(A)). In this way, an S corporation serves as a conduit through which income flows to its shareholders. *Id.* ("Subchapter S allows shareholders of qualified corporations to elect a 'pass-through' taxation system under which income is subjected to only one level of taxation."); *see also Bufferd v. Comm'r*, 506 U.S. 523, 525 (1993).

To receive such favorable tax treatment under the statute, a small business corporation must first meet all of the eligibility requirements before electing S corporation status.[1] Eligibility turns on three characteristics: (1) the number of shareholders, (2) the class of stock, and (3) the types of shareholders. I.R.C. § 1361(b).[2] In pertinent part, the statute limits eligible types of shareholders to domestic individuals, estates, certain trusts, and certain tax-exempt entities. I.R.C. § 1361(b)(1)(B), (c)(2), (c)(6). As of the 2003 tax year, § 1361(c)(2)(A) permitted the following trusts to be eligible shareholders:

> (i) A trust all of which is treated (under subpart E of part I of subchapter J of this chapter) as owned by an individual who is a citizen or resident of the United States.

> (ii) A trust which was described in clause (i) immediately before the death of the deemed owner and which continues in existence after such death, but only for the 2-year period beginning on the day of the deemed owner's death.

> (iii) A trust with respect to stock transferred to it pursuant to the terms of a will, but only for the 2-year period beginning on the day on which such stock is transferred to it.

---

[1] Furthermore, any subsequent violation of one or more of the eligibility rules automatically terminates a corporation's S status. I.R.C. § 1362(a), (d)(2). For example, if an eligible S corporation shareholder sells or otherwise transfers his shares to an ineligible shareholder, the corporation's status as an S corporation terminates immediately as a matter of law on the date of the transfer. I.R.C. § 1362(d)(2); Treas. Reg. § 1.1362-2(b)(2).

[2] Section 1361(b)(1)(A) limits the total number of shareholders to 100 (during the 2003 tax year, however, § 1361(b)(1)(A) limited the total number of shareholders to seventy-five). *See* American Jobs Creation Act of 2004, Pub. L. 108-357 § 232(a), 118 Stat. 1434 (2004). Additionally, the statute permits eligible S corporations to issue only one class of stock.

(iv)   A trust created primarily to exercise the voting power of stock transferred to it.

(v) An electing small business trust.[3]

Taxpayer Paul Di Mundo (Di Mundo) incorporated Taproot Administrative Services, Inc. in the state of Nevada on October 2, 2002. Taproot elected S corporation status effective as of the date of incorporation and filed its 2003 tax return on a Form 1120S, U.S. Income Tax Return for an S Corporation. On January 2, 2003, Taproot issued all outstanding shares of its stock to a custodial Roth IRA account held at the First Trust Co. of Onaga, in Onaga, Kansas, for the benefit of Di Mundo.[4] The custodial Roth IRA[5] account remained Taproot's

---

[3]The categories of eligible Subchapter S shareholders, as originally envisioned, have morphed considerably in passing years. At the time Congress first added Subchapter S in 1958, the list of permissible shareholders was limited to domestic individuals and estates. Over the years, Congress has gradually expanded the limits of eligibility to include some trusts and tax-exempt entities. In the Tax Reform Act of 1976, Congress extended Subchapter S to certain trusts, Pub. L. No. 94-455, § 902(f), 90 Stat. 1609, including what is commonly referred to as a grantor trust, "which is treated as owned by an individual who is a citizen or resident of the United States." I.R.C. § 1361(c)(2)(A)(i). The amendment also granted eligibility to voting trusts and electing small business trusts, among others. In 1996, Congress amended the statute through the Small Business Job Protection Act to permit certain tax-exempt organizations to own S corporation stock. Pub. L. No. 104-188, § 1316(a), 110 Stat. 1785. Most notably, a 2004 amendment extended the types of eligible trusts to banks whose stock is held in a trust qualifying as an IRA or a Roth IRA. American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 233(a), 118 Stat. 1434 (2004). That amendment, however, was enacted after the tax year here at issue.

[4]Under I.R.C. § 408(a) and § 408A(a), the terms IRA and Roth IRA generally refer to "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries." I.R.C. §§ 408(a), 408A(a). Both IRAs and Roth IRAs allow earnings on contributions to accrue tax-free. The basic tax characteristics of a traditional IRA are (1) deductible contributions, (2) the accrual of tax-free earnings (except with respect to § 511 unrelated business income), and (3) the inclusion of distributions in gross income. I.R.C. §§ 219(a), 408(a), (d)(1), (e). More

sole shareholder during the 2003 tax year. According to its 2003 tax return, Taproot earned a total income of $322,420. Taproot reported total deductions of $320,191, resulting in a net ordinary income of $2,229. Taproot also reported interest income totaling $8,549.

On April 10, 2007, the Commissioner of the Internal Revenue Service (I.R.S.) issued a notice of deficiency to Taproot for the 2003 tax year. Among other findings,[6] the Commissioner determined that a Roth IRA did not qualify as an eligible shareholder of an S corporation. Consequently, Taproot was deemed taxable as a C corporation for the 2003 tax year.

## II.

In response to the Commissioner's notice of deficiency, Taproot filed a petition with the U.S. Tax Court arguing that the individual beneficiary of a custodial account also qualifying as a Roth IRA should be considered the shareholder for purposes of the S corporation statute, or, in the alternative, a Roth IRA should be treated as a grantor trust pursuant to

recently, Congress created Roth IRAs as part of the Taxpayer Relief Act of 1997. Pub. L. No. 105-34, § 302, 111 Stat. 788, 825. Roth IRAs differ from traditional IRAs in that contributions may not be deducted, and future distributions are not taxable. I.R.C. § 408A(a), (c)(1), (d)(1), (2)(A).

[5]Sections 408(h) and 408A(a) permit a custodial account to be treated as an IRA or Roth IRA trust. In such cases, "[f]or purposes of [the statutory] section, a custodial account shall be treated as a trust if the assets of such account are held by a bank . . . and if the custodial account would, except for the fact that it is not a trust, constitute an [IRA]." I.R.C. § 408(h); *see also id.* § 408A(a) ("[A] Roth IRA shall be treated for purposes of this title in the same manner as an [IRA]."). Furthermore, the "custodian of such an account shall be treated as the trustee thereof" for the purposes of the statutory title. *Id.* § 408(h).

[6]The I.R.S. also challenged the income and expenses reported by Taproot. The parties settled these issues. Thus, the only issue before this Court on appeal is whether Taproot was eligible for S corporation status during the 2003 tax year.

§ 1361(c)(2)(A). Specifically, Taproot contended that as the sole beneficiary of the DiMundo Roth IRA, DiMundo should be considered the shareholder and, thus a qualifying individual for the purposes of the statute. According to Taproot, DiMundo's eligibility as such is governed by § 1.1361-1(e)(1) of the Treasury Regulations. In relevant part, the regulation provides that "[t]he person for whom stock of a corporation is held by a nominee, guardian, custodian, or an agent is considered to be the shareholder of the corporation for purposes of [the S corporation statute]." Treas. Reg. § 1.1361-1(e)(1). Taproot further supported this conclusion by citing Revenue Ruling 66-266, 1966-2 C.B. 356, and I.R.S. Priv. Ltr. Rul. 86-05-028 (Nov. 4, 1985) for the propositions that S corporation stock held in a custodial account for a disabled person or by a custodian under the Uniform Gifts to Minors Act, respectively, should be treated as held by the disabled person or child individually.

In the alternative, Taproot argued that a Roth IRA should be classified as a grantor trust, which qualifies as an eligible S corporation shareholder. Specifically, § 1361(c)(2)(A)(i) extends shareholder eligibility to any grantor trust[7] "all of which is treated . . . as owned by an individual who is a citizen or resident of the United States."

The Tax Court rejected Taproot's arguments, holding that a Roth IRA could not be an S corporation shareholder under the eligibility rules in place during 2003. As a result, Taproot was ineligible for S corporation status in 2003 and was therefore a C corporation for federal income tax purposes. In articulating its reasoning, the Tax Court first acknowledged that "no statute or regulation in effect during 2003 explicitly prohibited a traditional or Roth IRA from owning S corporation stock." *Taproot Admin. Serv. v. Comm'r*, 133 T.C. 202, 208

---

[7]Section 1361(c)(2)(A)(i) specifically references the sections of the I.R.C. governing grantors and others treated as substantial owners of trusts. *See* I.R.C. §§ 671-79.

(2009). The Tax Court then identified Revenue Ruling 92-73, as providing the only guiding legal authority on the issue. *Id.* Examining this ruling, in which the Commissioner held that a trust that qualifies as an IRA is not a permitted shareholder of an S corporation, the Tax Court concluded that the underlying rationale was sound and comported with the apparent intent of Congress, thus providing a compelling reason for its decision. The Tax Court was also mindful that under Taproot's theory of statutory construction, DiMundo would avoid virtually all taxation on his S corporation profits.

In determining the requisite deference owed to a revenue ruling, the Tax Court noted that it was not bound by the official interpretations of the I.R.S., which "are published for the information and guidance of taxpayers, I.R.S. officials, and others concerned." *Id.* (quoting Treas. Reg. 601.601(d)(2)(i)(a)). Rather, "applying the standard enunciated by the Supreme Court in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), the weight (if any) that [the court must] afford them depends upon their persuasiveness and the consistency of the Commissioner's position over time." *Id.* at 208-09.

Extending *Skidmore* deference to Revenue Ruling 92-73, the Tax Court found the ruling to "sensibly distinguish[ ] IRAs from grantor trusts." *Id.* at 210. In making that determination, the Tax Court relied in part on the rationale of Revenue Ruling 92-73, stating that:

> [T]raditional IRAs are not eligible S corporation shareholders because the beneficiary of a traditional IRA is not taxed currently on the IRA's share of the S corporation's income whereas the beneficiaries of the permissible S corporation shareholder trusts listed in section 1361(c)(2)(A) are taxed currently on the trust's share of such income.

*Id.* The Tax Court also noted the functional difference between IRAs and grantor trusts. Governed by distinct code sections, traditional and Roth IRAs exist separately from their owners for federal taxation purposes, while grantor trusts do not.[8]

Turning to the second factor set forth in *Skidmore*, the Tax Court also found that the Commissioner had applied the revenue ruling consistently. In particular, the Tax Court cited the Commissioner's uniform citation to Revenue Ruling 92-73 in private letter rulings addressing automatic terminations of S corporation status upon stock acquisition by IRAs. *Id.*

Finally, the Tax Court shifted its attention to the legislative intent behind the S corporation statute, finding the only available evidence to suggest that Congress did not intend to allow IRAs to own S corporation stock. *Id.* Although at the time Congress initially drafted the S corporations statute, both traditional and Roth IRAs had yet to be created,[9] the Tax Court reasoned that "had Congress intended to render IRAs eligible S corporation shareholders, it could have done so explicitly," as it did with the narrow 2004 amendment allowing banks with IRA shareholders to elect S status in specific circumstances.[10] *Id.* at 213.

---

[8]The Tax Court further noted the irrationality of imparting grantor status to a traditional or Roth IRA. Particularly, because grantor trusts are simply conduits through which income and gains pass to the grantor, the grantor must account for any income and deductions pertaining to the trust. 133 T.C. at 212. Income attributable to a traditional or Roth IRA, on the other hand, does not pass to the beneficiary for tax purposes. Moreover, the tax-free accrual of income allowed at the IRA level is "one of the cornerstones of traditional and Roth IRAs." *Id.* Treating IRAs as grantor trusts would eliminate that quintessential benefit. *Id.*

[9]It was not until 1974, as part of the Employee Retirement Income Security Act, that Congress enacted the original provisions creating IRAs. Pub. L. No. 93-406, § 408, 88 Stat. 959.

[10]Congress added § 1361(c)(2)(A)(vi) to the S corporation statute in 2004, permitting traditional and Roth IRAs to be shareholders of banks or depository institution holding companies. However, this eligibility only extends to stock held by IRAs on or before October 22, 2004.

Noting the fact that Congress passed the 2004 amendment after the tax year at issue, the Tax Court posited that Congress would not have "engaged in a useless act." *Id.* at 214. This was especially true in light of Congress's 1999 directive to "the Comptroller General of the United States to conduct a study of possible revisions to the rules governing S corporations including 'permitting shares of such corporations to be held in individual retirement accounts.' " *Id.* at 213 (quoting Gramm-Leach-Bliley Act, Pub. L. No. 106-102, 113 Stat. 1470 (1999)). Subsequently, the Tax Court voiced its reluctance to find that Congress had sent the Comptroller General on a "fool's errand," inviting it to reach a conclusion that would have rendered "an entire clause of section 1361 mere surplusage." *Id.* at 214. For these reasons, the Tax Court concluded that traditional and Roth IRAs were not eligible shareholders under § 1361(b).

### III.

We review the Tax Court's grant of summary judgment de novo. *Miller v. Comm'r*, 310 F.3d 640, 642 (9th Cir. 2002). The record is reviewed in the light most favorable to the appellant "to determine whether there is a genuine issue of fact and whether the tax court applied the substantive law correctly." *Sierra Club Inc. v. Comm'r*, 86 F.3d 1526, 1530 (9th Cir. 1996) (internal quotation marks and citation omitted). This appeal does not involve any disputed issues of fact. Rather, the central question for review turns solely on whether a custodial Roth IRA qualifies as an eligible shareholder for the purpose of assessing S corporation taxation.

At the outset, we adopt the Tax Court's reasoning; however, as observed in Judge Halpern's concurring opinion,[11] the

---

[11]Judge Halpern, of the Tax Court, concluded that the plain meaning of the regulation served only as a "starting point for an analysis of the interaction between the rules governing S corporations and those governing IRAs." 133 T.C. at 216 (Halpern, J., concurring). His concurrence then

analysis requires further elaboration. In particular, the Tax Court cabined its focus to the applicability of the statutory provision recognizing grantor trusts as eligible shareholders to Roth IRAs. This narrow perspective fails, however, to squarely address Taproot's alternative argument for eligibility as the legal owner of the individual shares of stock comprising the IRA.[12] On appeal, Taproot therefore appears to concentrate the bulk of its argument on the contention that IRAs and Roth IRAs as investment instruments are indistinguishable from their individual owners—in this case, Di Mundo. Taproot maintains that the Di Mundo Roth IRA, which held all of Taproot's outstanding shares during the 2003 tax year, functioned merely as the form of Di Mundo's individual investment account. Thus, under Taproot's logic, the shares were owned by an eligible shareholder within the meaning of the S corporation statute. At minimum, Taproot claims that the plain language of Treasury Regulation § 1.1361-1(e)(1) explicitly authorizes those IRAs and Roth IRAs created as custodial accounts to be shareholders of S corporations. In the following part, we review the broader issue of IRA and Roth IRA eligibility under the statute, and then address Treasury Regulation § 1.1361-1(e)(1).

---

noted that IRAs violate the general rule of custodial accounts requiring "flowthrough taxation of the beneficiary." *Id.* According to the concurrence, the tax treatment is "the rationale for considering the beneficiary of a custodial account that holds S corporation stock to be a shareholder of the S corporation." *Id.*

[12]The Tax Court's majority opinion merely references Treasury Regulation § 1.1361-1(e)(1) in a footnote, concluding that Taproot's reliance on the regulation is misplaced. Specifically, the court observed that IRAs differ from the examples provided in the regulation in that the income attributable to the S corporation does not flow through to the beneficiary. Rather, the IRA exists on its own, separate from the beneficiary, and any income consequently belongs to the IRA. 133 T.C. at 211 n.20.

A.

Grounding its argument in statutory construction and legislative history, Taproot first claims that both forms of IRAs and Roth IRAs—trusts and custodial accounts—lack the essential characteristics of a separate taxpayer and should therefore be treated as indistinguishable from the individual owners. Consequently, Taproot maintains that IRAs and Roth IRAs should be deemed domestic individuals under the S corporation eligibility rules. This argument, however, flounders in a number of ways.

In support of its position, Taproot contends that because IRAs and Roth IRAs do not file separate tax returns they should not be considered separate taxpayers. Taproot cites to statutory provisions merging IRAs with their individual owners for excise tax purposes as further evidence that the I.R.S. intended for IRAs and Roth IRAs to share the identity of their individual owners for S corporation purposes. *See, e.g.*, I.R.C. § 408(o)(4). Additionally, Taproot notes the ability of the I.R.S. to levy against IRA funds to satisfy the tax liabilities of the underlying owner.[13] *See, e.g.*, *Ameritrust Co. v. Derakshan*, 830 F. Supp. 406, 410 (N.D. Ohio 1993).

We begin our analysis of this strand of Taproot's argument by identifying the level of deference to which an agency's statutory interpretation is entitled. As both parties concede, I.R.S. revenue rulings are entitled to the degree of deference articulated by the Supreme Court in *Skidmore*, 323 U.S. at 140, and *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001).[14] Under *Skidmore*, the weight given to an agency's

[13]Pursuant to I.R.C. § 6331, "[i]f any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax . . . by levy upon all property and rights to property . . . belonging to such person" unless an exemption applies under § 6334. There is no exemption for IRA or Roth IRA accounts under § 6334.

[14]The Tax Court applied the less stringent *Skidmore* factors in its analysis of Revenue Ruling 92-73, and both parties concede it is the appropriate

interpretation depends on (1) the thoroughness and validity of the agency's reasoning; (2) the formality of the agency's interpretation; (3) the formality of the agency's action; and (4) all of those factors giving it the power to persuade, if lacking power to control. *Mead*, 533 U.S. at 228.

In finding persuasive the I.R.S.'s interpretation of "individual" as excluding IRA and Roth IRA accounts, we employ the familiar principle that "the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses." *Hanover Bank v. Comm'r*, 369 U.S. 672, 687 (1962) (quoting *Crane v. Comm'r*, 331 U.S. 1, 6 (1947)); *see also De Ganay v. Lederer*, 250 U.S. 376, 381 (1919) ("[S]tatutory words are presumed to be used in their ordinary and usual sense and with the meaning commonly attributable to them."). Here, the Internal Revenue Code does not define the word "individual"; therefore, we interpret it in accordance with its ordinary, everyday usage. Black's Law Dictionary defines the term "individual" as "1. Existing as an indivisible entity. 2. Of or relating to a single person or thing, as opposed to a group." Black's Law Dictionary (9th ed. 2009). More instructively, Webster's Dictionary defines the term "individual" as "a single human being as contrasted with a social group or institution." Webster's Ninth New Collegiate Dictionary 615 (1987); *see also Johnson v. Comm'r*, 353 F.3d 1181, 1184 (10th Cir. 2003) ("When the word 'individual' is used elsewhere in the Internal Revenue Code, the con-

standard. This Court, however, has not definitely resolved the issue of whether revenue rulings are entitled to *Skidmore* deference or the deference articulated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-844 (1984). *See Tualatin Valley Builders Supply, Inc. v. United States*, 522 F.3d 937, 941, 941-42 (9th Cir. 2008) (stating that the "case law leaves unresolved the question whether a revenue procedure should receive *Chevron* or *Skidmore* deference" and declining to resolve the matter). We, too, decline to resolve this question, as we conclude that the I.R.S.'s position is persuasive without affording *Chevron* deference to Revenue Ruling 92-73.

text almost always compels it to be construed to mean a human being.") (citing I.R.C. § 1(a), (c)).

**[1]** Taproot claims that both forms of IRAs—trusts and custodial accounts—lack the essential attributes of a separate tax-paying entity and consequently should be treated as legally indistinguishable from their individual owners. Yet, it provides neither persuasive reasoning nor convincing authority for this conclusion. To the contrary, the reasoning behind Revenue Ruling 92-73 unequivocally supports the opposite result. As relied on by the Tax Court, this revenue ruling specifies that a trust is a permitted shareholder only in cases where the trust is described in § 1361(c)(2)(A)(i), or is a qualified subchapter S trust (QSST) that is treated as a trust under § 1361(c)(2)(A)(i) pursuant to the election of the beneficiary. Consequently, this excludes IRAs and Roth IRAs from eligibility. The I.R.S. notes in its analysis that the beneficiary of either a grantor trust or a QSST is taxed currently on the trust's share of S corporation income, deductions, and credits. In contrast, the beneficiary of an IRA trust does not pay taxes on income until distributions are made from the trust. Thus, the IRA taxation rules are incompatible with the rules applying to § 1361(c)(2)(A)(i) or a QSST. Implicit in Revenue Ruling 92-73 is the I.R.S.'s classification of IRAs and Roth IRAs as trusts rather than individuals.

**[2]** Applying *Skidmore* deference, we agree with the conclusion of the Tax Court that Revenue Ruling 92-73 provides persuasive guidance that IRAs are ineligible for S corporation shareholders. The distinguishing feature is the deferred income tax treatment, which differentiates IRAs from beneficiaries listed in § 1361(c)(2)(A) who are taxed currently on the trust's share of income. This revenue ruling turns on sound reasoning. As noted by the Commissioner, the I.R.S. has also applied Revenue Ruling 92-73 consistently since its adoption, including in a host of private letter rulings that rely upon the revenue ruling to address inadvertent termination

waiver requests under I.R.C. § 1362(f). P8P8 [15] *See, e.g.*, I.R.S. Priv. Ltr. Rul. 2009-15-020 (Dec. 19, 2008); I.R.S. Priv. Ltr. Rul. 2005-01-013 (Sept. 29, 2004).

Furthermore, despite Taproot's argument to the contrary, the legislative history of the S corporation statute favors limited eligibility. Taproot suggests that the Congressional history reflects a narrow intent to merely preserve the integrity of the statute's limitation on the number of S corporation shareholders. In Taproot's opinion, Congress's overriding concern has always been restricted to limiting the *number* of S corporation shareholders, rather than the *type*.[16] To support

---

[15]Commissioner admits that private letter rulings may not be used or cited as precedent under I.R.C. § 6110(k)(3); however, they may be used as evidence of an administrative practice of the Commissioner. Thus, the weight we accord Revenue Ruling 92-73 is further supported by the number of subsequent private letter rulings citing the revenue ruling as controlling. Indeed, forty-two private letter rulings have cited Revenue Ruling 92-73 for the proposition that IRAs are ineligible shareholders, thirty-two of which occurred during or before the tax year at issue. *See, e.g.,* I.R.S. Priv. Ltr. Rul. 2003-16-012 (Apr. 18, 2003); I.R.S. Priv. Ltr. Rul. 2003-09-018 (Feb. 28, 2003); I.R.S. Priv. Ltr. Rul. 2002-25-009 (Dec. 13, 2002).

[16]At the time the S Corporation statute was enacted in 1958, the maximum number of shareholders was capped at ten. Additionally, only individuals and estates were permitted as shareholders. Technical Amendments Act of 1958, Pub. L. 85-866 § 64(a), 72 Stat. 1650 (1958). In 1977, the total number of shareholders was increased to fifteen following a five-year waiting period. The statute also extended eligibility to grantor trusts. Tax Reform Act of 1976, Pub. L. 94-455 § 902, 90 Stat. 1609 (1976). Two years later, Congress abolished the five-year waiting period and universally capped the number of shareholders at fifteen. Eligibility was expanded to bankruptcy estates, and Congress clarified that husband, wife and heirs would be treated as one shareholder. Revenue Act of 1978, Pub. L. 95-600 § 341(a), 92 Stat. 2843 (1978). In 1982, Congress increased the shareholder maximum to twenty-five and added certain trusts as eligible shareholders. Economic Recovery Tax Act of 1981, Pub. L. 97-34 § 233(a), 95 Stat. 250 (1981). Just one year later Congress again increased the cap to thirty-five. Subchapter S Revision Act of 1982, Pub. L. 97-354 § 2, 96 Stat. 1669 (1982). Congress then increased the maxi-

this position, Taproot cites the extension of the statute to grantor trusts and voting trusts, as well as the 1997 amendments adding employee stock ownership plans (ESOPs) and charitable organizations to the list of permitted shareholders. In Taproot's view, the expansion in eligibility evidences Congress's intent to include IRAs as eligible shareholders.

**[3]** According to the legislative history of the ESOP eligibility amendment, however, Congress did not envision IRAs as permissible shareholders at the time of enactment. In detailing the reasons for the amendment, the Joint Committee for Taxation stated that "the provisions of subchapter S were enacted in 1958 and substantially modified in 1982 on the premise that all income of the S corporation (including all gains on the sale of the stock) would be subject to a shareholder-level income tax." S. Rep. No. 104-281, at 61 (1996). Thus, in enacting the statute, Congress did not contemplate or intend eligibility for IRAs and other entities entitled to deferred taxation.

Moreover, as noted by the Tax Court, there is no other indication that "Congress ever intended to allow IRAs to own S corporation stock." 133 T.C. at 213. In fact, the "only available evidence suggests otherwise." *Id.* IRAs or Roth IRAs were not explicitly listed in § 1361 as eligible S corporation shareholders in 2003 or in any year prior. If at any point Congress had intended IRA eligibility, it could have amended the statute. In fact, in 2004 Congress explicitly extended shareholder eligibility to IRAs in the limited case of bank corporations. *See supra* n. 3.

---

mum number of shareholders to seventy-five in 1997. At that time, Congress also extended eligibility to employee stock ownership plans (ESOPs) and affiliated group members. Small Business Job Protection Act of 1996, Pub. L. 104-188 § 1301, 110 Stat. 1777 (1996). Following the tax year at issue, Congress expanded the total number of shareholders to 100. American Jobs Creation Act of 2004, Pub. L. 108-357 § 232(a), 118 Stat. 1434 (2004).

Although this 2004 IRA eligibility amendment occurred after the tax year at issue, and is therefore not controlling, *see United States v. Phila. Nat'l Bank*, 374 U.S. 321, 348-49 (1963), the Commissioner argues that it should not be disregarded. Indeed, if IRAs and Roth IRAs qualified as eligible shareholders in 2003, then the subsequent amendment would have been completely unnecessary. As the Tax Court's majority opinion points out, this Court, as well as the Supreme Court, *see, e.g.*, *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596 (1980), have held that a succeeding view of Congress is certainly entitled to consideration in ascertaining legislative intent. *See, e.g.*, *United States v. Hecla Mining Co.*, 302 F.2d 204, 211 (9th Cir. 1961). Here, the 2004 amendment, coupled with the prior legislative history, unequivocally supports the I.R.S.'s interpretation of the S corporation statute and promulgation of Revenue Ruling 92-73.

## B.

**[4]** Turning next to Treasury Regulation § 1.1361-1(e), Taproot argues that this provision, which offers guidance on assessing the number of shareholders for purposes of the S corporation statute, directly authorizes ownership of S corporation stock by IRAs and Roth IRAs created as custodial accounts. Furthermore, Taproot contends that the unambiguous meaning of the regulation should be authoritative in this matter over any informal agency guidance or policy interpretations. In pertinent part, the regulation specifies that:

> A corporation does not qualify as a small business corporation if it has more than 75 shareholders (35 for taxable years beginning prior to January 1, 1997). Ordinarily, the person who would have to include in gross income dividends distributed with respect to the stock of the corporation (if the corporation were a C corporation) is considered to be the shareholder of the corporation. For example, if stock (owned other than by a husband and wife) is owned by ten-

ants in common or joint tenants, each tenant in common or joint tenant is generally considered to be a shareholder of the corporation . . . . The person for whom stock of a corporation is held by a nominee, guardian, custodian, or an agent is considered to be the shareholder of the corporation for purposes of this paragraph (e) and paragraphs (f) and (g) of this section.[17] For example, a partnership may be a nominee of S corporation stock for a person who qualifies as a shareholder of an S corporation. However, if the partnership is the beneficial owner of the stock, then the partnership is the shareholder, and the corporation does not qualify as a small business corporation. In addition, in the case of stock held for a minor under a uniform gifts to minors act or similar statute, the minor and not the custodian is the shareholder.

Treas. Reg. § 1.1361-1(e). As stated, the regulatory provision also governs whether a stockholder qualifies as an individual for purposes of the S corporation statute.

In Taproot's opinion, the present case turns largely on the construction of this regulation because the Di Mundo Roth IRA was created as a custodial account. According to Taproot, under the plain language of the regulation, the Di Mundo Roth IRA serves as a custodial account for the benefit of Di Mundo, who is then treated as the shareholder for purposes of S corporation eligibility. As noted by Taproot, prior to the promulgation of this regulation, the I.R.S. issued a revenue

---

[17]Paragraph (f) provides guidance on the terms "individual" and "estate." It explicitly indicates that the provision of paragraph (e) which clarifies ownership by a nominee, guardian, custodian or agent also applies to the definition of an individual for purposes of the statute. According to the paragraph,"[e]xcept as otherwise provided in paragraph (e)(1) (relating to nominees), paragraph (h) (relating to certain trusts) of this section, a corporation in which any shareholder is a corporation, partnership, or trust does not qualify as a small business corporation." Treas. Reg. § 1.1361-1(f)(2003).

ruling and a private letter ruling concluding that S corporation stock held in a custodial account for a disabled person or by a custodian under the Uniform Gifts to Minors Act should be treated as held by the disabled person or child, individually. *See, e.g.*, Rev. Rul. 66-2666, 1966-2 C.B. 356 (stating that the disabled beneficiary of a custodial arrangement is treated as the shareholder); I.R.S. Priv. Ltr. Rul. 86-05-028 (Nov. 4, 1985) (holding that the individual beneficiary is considered the shareholder under the Uniform Gifts to Minors Act).

The Commissioner argues in response that the language of the regulation requires consideration of who ultimately bears the tax responsibility from its application. Specifically, the Commissioner finds instructive the regulatory provision stating that the shareholder of a corporation is "[o]rdinarily, the person who would have to include in gross income dividends distributed with respect to the stock of the corporation." Treas. Reg. § 1.1361-1(e). Accordingly, the current taxation of income derived from the corporation to the beneficiary provides the rationale for treating the beneficiary of a custodial account that holds S corporation stock as the shareholder.

Applying this logic, custodial IRAs and Roth IRAs are different in kind and therefore distinguishable from other custodial accounts, such as those involving minors or disabled individuals. The latter form of custodial account functions to hold shares for a person who cannot otherwise legally hold them. In such cases, income is taxed currently to that person, in contrast to IRAs and Roth IRAs, where individuals who could legally hold the underlying assets instead choose to place them in such accounts, thereby deferring or exempting taxation of any current income. This subverts the rationale for the attribution rule in the regulation, and in the Commissioner's opinion, forecloses any extension of the regulation to IRAs and Roth IRAs.

**[5]** Furthermore, the I.R.S. has consistently adopted this interpretation in various private letter rulings by applying

Revenue Ruling 92-73 to custodial IRAs in the same manner as trust IRAs. *See, e.g.*, I.R.S. Priv. Ltr. Rul. 2002-42-024 (Oct. 18, 2002) (finding S corporation status terminated at the time shareholder transferred shares of the company's stock to a bank as custodian of another individual's IRA); I.R.S. Priv. Ltr. Rul. 96-44-030 (Nov. 1, 1996); I.R.S. Priv. Ltr. Rul. 95-28-008 (Apr. 12, 1995); I.R.S. Priv. Ltr. Rul. 95-02-014 (Jan. 13, 1995).[18] Although private letter rulings may not be used or cited as precedent under I.R.C. § 6110(k)(3), they may be used as evidence of an administrative practice of the Commissioner. *See, e.g.*, *American Ass'n of Christian Schools Voluntary Employees Beneficiary Ass'n Welfare Plan Trust v. United States*, 850 F.2d 1510, 1515 n.6 (11th Cir. 1988) (citing *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 261 n.17 (1981)). In the instant case, therefore, this pattern of private letter rulings provides evidence of the agency's uniform classification of custodial IRAs as identical to those created as trusts for the purpose of applying Revenue Ruling 92-73. Basic logic dictates that through the coalescence of custodial IRAs with trust IRAs under Revenue Ruling 92-73, the I.R.S. necessarily excludes custodial IRAs from the purview of Treasury Regulation §1.1361-1(e).

In the final analysis, Taproot's argument founders on the shoals of logic and well-settled rules of regulatory interpretation. To adopt the position Taproot urges, this Court must conclude that Congress consciously crafted a legislative scheme enabling shareholders to employ Roth IRAs to perpetually avoid any taxation on S corporation profits.[19] The legislative history and regulatory record foreclose this conclusion.

---

[18]Without specifically referencing Revenue Ruling 92-73, the I.R.S. has concluded in other private letter rulings that status as an S corporation terminates at the time a custodial IRA acquires stock in that corporation. *See* I.R.S. Priv. Ltr. Rul. 2000-31-046 (May 9, 2000); I.R.S. Priv. Ltr. Rul. 94-51-055 (Dec. 23, 1994).

[19]On appeal Taproot contends that the Tax Court's underlying policy concerns provided the true impetus for its decision. Particularly, the Tax

As Judge Halpern sagely noted in his concurring opinion below, "the critical attributes of an IRA — i.e., **deferral** of or **exemption** from taxation — are antithetical to the rationale for permitting custodial accounts to be shareholders of S corporations." 133 T.C. at 216 (emphasis in original). This Court embraces the I.R.S.'s narrow interpretation of Treasury Regulation § 1.1361-1(e)(1), restricting its application to custodial accounts in which corporate dividends are taxed in the same year received.

**[6]** Moreover, for the reasons discussed above, we find persuasive the agency's opinion that ownership of custodial IRAs and Roth IRAs should not be attributed to the underlying individual for purposes of S corporation eligibility. To hold otherwise would undermine the entire taxation structure underlying individual retirement accounts.

Accordingly, the decision of the United States Tax Court is

**AFFIRMED.**

---

Court observed in a footnote that "tax alchemy" could be effectuated if Roth IRAs qualified as eligible shareholders. This would enable S corporations to achieve an overwhelming benefit over C corporation competitors which are subject to two levels of taxation. In drawing this conclusion, the Tax Court expressed its skepticism that the Unrelated Business Income Tax (UBIT) could adequately mitigate this tax advantage. In general, the UBIT subjects the business earnings of tax-exempt organizations to taxation, thereby functioning to prevent them "from unfairly using their tax-exempt status to compete with commercial businesses." *Alumni Ass'n of the Univ. of Or., Inc. v. Comm'r*, T.C. Memo. 1996-63, *aff'd.* 193 F.3d 1098 (9th Cir. 1999). Although Taproot contends that the UBIT negates the Tax Court's policy concerns, the Commissioner correctly observes that I.R.C. § 512 generally excludes passive investment income, such as interest income, from application of the UBIT. Thus, in this case, the interest income at issue would not be subject to the UBIT.