NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CPESAZ LIQUIDATING, INC., fka<br>Community Provider of Enrichment<br>Services, Inc.; NDS LIQUIDATING,<br>INC., fka Novelles Developmental<br>Services, Inc.; CPESCA LIQUIDATING,<br>INC., fka CPES California, Inc.,<br>Debtors. | BAP Nos. CC-22-1156-FSG<br>CC-22-1157-FSG<br>(Related Appeals)<br><br>Bk. No. 9:20-bk-10554-DS |
| ROBERT BENNETTI; LINDA<br>MARIANO; LINKI PEDDY; CHARLES<br>FOUST, JR.; CPES, INC., Employee Stock<br>Ownership Plan and Trust Participants,<br>Appellants,<br>v.<br>OXFORD RESTRUCTURING<br>ADVISORS LLC,<br>Appellee. | **MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Central District of California
Deborah J. Saltzman, Bankruptcy Judge, Presiding

Before: FARIS, SPRAKER, and GAN, Bankruptcy Judges.

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.88

## INTRODUCTION

The chapter 11[1] debtors created an employee stock ownership plan, or ESOP, under which the debtors contributed cash and shares of their stock to a trust for the benefit of their employees. Former employees of the debtors asserted claims against the debtors based on their rights in the ESOP. The bankruptcy court disallowed their claims, holding that the employees had rights against the ESOP trust but that those rights did not give them any claim against the debtors.

The employees fail to establish an entitlement to payment from the debtors: the debtors were not obligated to the employees under the ESOP, and the employees' claims were duplicative of claims asserted by the ESOP trustee. We therefore AFFIRM.

## FACTS

### A.    Prepetition events

Community Providers of Enrichment Services, Inc. ("CPES") and its subsidiaries, Novelles Developmental Services, Inc. and CPES California, Inc. (collectively, the "Debtors"),[2] provided behavioral health services in

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] During the course of the bankruptcy case, the Debtors changed their names: CPES became CPESAZ Liquidating, Inc.; Novelles Developmental Services, Inc., became NDS Liquidating, Inc.; and CPES California, Inc. became CPESCA Liquidating, Inc. To minimize confusion, we will largely disregard the name change.

California and Arizona. The latter two entities were wholly-owned subsidiaries of CPES. CPES was an S corporation; in order to maintain that status, CPES could not have more than 100 shareholders. 26 U.S.C. § 1361.

CPES created an ESOP for the benefit of all three companies' employees. Appellants Robert Bennetti, Linda Mariano, Linki Peddy, and Charles Foust, Jr. (the "ESOP Participants")[3] are participants in the ESOP.

The ESOP was governed by the CPES Employee Stock Ownership Plan ("ESOP Plan") and CPES Employee Ownership Trust Agreement ("ESOP Agreement"). Under these documents, CPES created a trust that held all of CPES's stock. The ESOP trust is operated by a trustee and a committee, both of which are selected by CPES's board of directors.

Section 13 of the ESOP Plan provided for distributions to plan participants as directed by the ESOP committee. The distributions may be made in CPES stock, cash, or both. However, because CPES was an S corporation, distributions could be restricted to cash payments:

> (b) . . . **[W]hile CPES is an S Corporation, the distribution of a Participant's Capital Accumulation may be made entirely in cash without granting him the right to demand distribution in shares of CPES Stock**. Alternatively, CPES Stock may be distributed subject to the requirement that it be immediately resold to CPES under payment terms that

---

[3] The ESOP Participants purport to include the named parties as well as ninety-two other individuals. Neither the notice of appeal nor the ESOP Participants' briefs identifies these ninety-two individuals. We express no opinion on the question whether one may prosecute an appeal on behalf of unnamed appellants.

comply with Section 14.(b).

(Emphasis added.)

Section 19 of the ESOP Plan provided that, upon termination of the plan, "the Accounts of the affected Participants . . . will become fully vested as of that date . . . . A complete discontinuance of Employer Contributions shall be deemed to be a termination of the Plan for this purpose." Plan termination could trigger distribution of participants' benefits.

CPES appointed Miguel Paredes of Prudent Fiduciary Services, LLC as trustee of the ESOP ("ESOP Trustee").

## B.     The chapter 11 case

In 2020, the three Debtors filed chapter 11 petitions. The bankruptcy court later approved the sale of the Debtors' assets.[4]

The bankruptcy court approved an amended joint plan of reorganization ("Liquidation Plan") in May 2021.[5] The Liquidation Plan called for liquidating the Debtors, which would result in a 100% payout to unsecured creditors and a surplus for the ESOP, as stockholder of CPES.[6]

---

[4] No party appealed the sale order, and the sale has been consummated.

[5] We affirmed the confirmation order. *Bennetti v. CPESAZ Liquidating, Inc. (In re CPESAZ Liquidating, Inc.)*, BAP No. CC-21-1123-LGT, 2022 WL 2719642 (9th Cir. BAP Sept. 2 2022). The ESOP Participants appealed the ruling to the Ninth Circuit, where it is pending.

[6] The Liquidation Plan placed the equity interest in CPES held by the ESOP in Class 6. It provided that equity interests would be paid a pro rata dividend once unsecured claims were paid in full. It also stated that "the ESOP Trustee shall retain responsibility, standing, and authority to commence, prosecute and settle lawsuits or actions on behalf of the holders of beneficial interests to the Equity Interest in the

Appellee Oxford Restructuring Advisors, LLC was appointed liquidating trustee of the CPES Liquidating Trust (the "Liquidating Trustee").

## C. The proofs of claim

In the meantime, on September 29, 2020, dozens of ESOP participants filed proofs of claim for various dollar amounts. The proofs of claim were filed with a claims agent and later filed under seal.[7]

The following day, the ESOP Trustee, on behalf of the ESOP, filed two proofs of claim. The first claim asserted an unsecured claim for $255,150, for "all amounts due to the ESOP related to participant distributions that were made based on the prior 2018 stock value." He stated that, based on his review, CPES had inflated the valuation of its stock in 2018, that distributions to ESOP participants based on that valuation had been too large, and that as a result, the ESOP had less assets for the other participants than it should have had.

In the second claim, the ESOP Trustee asserted that the ESOP held 100% of CPES's shares and that "the ESOP, on behalf of the participants, asserts a proof of interest for its equity interests in the Debtor. The ESOP, on behalf of the participants, also asserts a proof of claim for all amounts due to the ESOP related to its equity interests in the Debtor."

---

ESOP."

[7] Counsel for the ESOP Participants acknowledge that they did not provide us with copies of their proofs of claim in their excerpts of record. We have also been unable to locate the proofs of claim on the bankruptcy court's claims register or docket.

**D.     The omnibus objections**

The Liquidating Trustee filed a pair of omnibus objections[8] to the ESOP Participants' proofs of claim. It argued that the ESOP Participants' proofs of claim did not support claims against the Debtors, because the ESOP Participants had rights against only the ESOP trust. It also argued that the ESOP Participants' claims were duplicative of the ESOP Trustee's claims and lacked sufficient information.

The ESOP Participants opposed the omnibus objections. They argued that the Debtors had an obligation to repurchase company stock distributed to plan participants and beneficiaries under 26 U.S.C. § 409(h)(1)(B), and that the ESOP participants are entitled to exercise a "put" option and force the Debtors to repurchase the company stock under 26 U.S.C. § 409(h)(4). They acknowledged that this requirement does not apply to S corporations such as CPES "if such plan provides that the participant entitled to a distribution has a right to receive the distribution in cash . . . ." 26 U.S.C. § 409(h)(2).

The ESOP Participants argued that the termination of the ESOP triggered the Debtors' repurchase obligations. They concluded that their

---

[8] In bankruptcy parlance, an objection to multiple claims is called an "omnibus objection." *See* Rule 3007(d) ("[O]bjections to more than one claim may be joined in an omnibus objection if all the claims were filed by the same entity, or the objections are based solely on the grounds that the claims should be disallowed, in whole or in part, because: . . . (1) they duplicate other claims; . . . (7) they are interests, rather than claims[.]").

rights under the Debtors' repurchase obligations are "at parity" with unsecured creditors under Arizona state law.

They also argued that their proofs of claim provided sufficient information and were not duplicative of the ESOP Trustee's claims.

The bankruptcy court sustained the objections, holding that the ESOP Participants held no claims against the Debtors. It noted that "(1) the Debtors are S corporations, which exempts them from the requirements of 26 U.S.C. § 409(h)(1), and (2) the ESOP Participants were never given debt instruments of any kind . . . ." It explained that, because "CPES Stock is held in the CPES ESOP and is never distributed directly to ESOP Participants, it does not appear that the Debtor owes any direct obligation to the Participants . . . ."

The bankruptcy court summarized:

> There is not a "put" option in the CPES ESOP. The Debtors are not required to repurchase stock held by ESOP Participants because ESOP Participants do not hold stock under the CPES ESOP. The Debtor contributes cash to the ESOP or repurchases stock held *in the ESOP Trust*, which allows the ESOP to fund distributions. The ESOP Participants simply have not shown that this is a direct obligation of the Debtors. Accordingly, the claim must be disallowed.

The court also held that the ESOP Participants' claims were duplicative of the ESOP Trustee's claims. It agreed with the Liquidating Trustee "that the ESOP Trustee is the only party with the authority to sue, defend, compromise, arbitrate, or settle any suit or legal proceeding or any

7

claim due it or on which it may be liable . . . ." However, it disagreed with the Liquidating Trustee's position that the claims lacked sufficient information.

The bankruptcy court entered orders sustaining the Liquidating Trustee's two omnibus objections. The ESOP Participants timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in disallowing the ESOP Participants' claims.

## STANDARDS OF REVIEW

In the claim objection context, we review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

Factual findings are clearly erroneous if they are "illogical, implausible, or without support in the record." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

8

## DISCUSSION

**A.  The ESOP Participants do not have any enforceable claim against the Debtors.**

The bankruptcy court held that the ESOP Participants do not have any rights against the Debtors and so do not have any enforceable claims against the Debtors. We agree; the ESOP Participants' rights under the ESOP do not make them unsecured creditors of the Debtors.

The Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" § 101(5)(A).

It is not enough that a creditor have a right to payment. The creditor must also have a right to payment that is enforceable against the debtor or the debtor's property. § 502(b)(1). In other words, an obligation that a third party owes, and the debtor does not owe, is not an allowed claim.

The ESOP Participants assert that they have rights against the Debtors pursuant to the Tax Code, the ESOP Plan, Arizona law, and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). They are wrong.

First, the ESOP Participants contend that the Tax Code mandates that CPES owes them a "repurchase" or "put" obligation, whereby CPES must repurchase the ESOP Participants' stock following termination of the plan.

The Tax Code requires that, in certain situations, an ESOP must

9

provide that a participant "has a right to require that the employer repurchase employer securities under a fair valuation formula." 26 U.S.C. § 409(h)(1)(B). However, this requirement is inapplicable if the employer is an S corporation,[9] 26 U.S.C. § 409(h)(2)(B)(ii)(II), and if "such plan provides that the participant entitled to a distribution has a right to receive the distribution in cash," subject to an exception not relevant here, 26 U.S.C. § 409(h)(2)(B)(i). This limitation is important because an S corporation may not have more than 100 shareholders. If more than 100 parties become owners of the corporation's stock, the corporation loses substantial tax benefits. *See* 26 U.S.C. § 1362(d)(2)(A) (termination of S corporation status); *Taproot Admin. Servs., Inc.*, 679 F.3d at 1110-11 & n.1 (noting that, "[t]o receive such favorable tax treatment under the statute, a small business corporation must first meet all of the eligibility requirements before electing S corporation status[,]" and that "any subsequent violation of one or more of the eligibility rules automatically terminates a corporation's S status").

The parties agree that CPES is an S corporation. As such, the ESOP need only provide the ESOP Participants a right to receive the distributions

---

[9] Most corporations are treated as separate taxable entities that pay income tax on their own income. An "S corporation" under 26 U.S.C. § 1361 is not a separately taxable entity; rather, the corporation's income is "passed through" to its shareholders. *See Taproot Admin. Servs., Inc. v. Comm'r*, 679 F.3d 1109, 1110 (9th Cir. 2012) ("[A]n S corporation's profits pass through directly to its shareholders on a pro rata basis and are reported on the shareholders' individual tax returns. In this way, an S corporation serves as a conduit through which income flows to its shareholders." (cleaned up)).

in cash. Here, the ESOP Plan provides for this situation: "Distribution . . . will be made in shares of CPES Stock, cash or a combination of both. . . . [W]hile CPES is an S Corporation, the distribution of a Participant's Capital Accumulation may be made entirely in cash without granting him the right to demand distribution in shares of CPES Stock." In other words, consistent with the Tax Code, the ESOP Plan provides that the Debtors' employees have no right to receive distribution in the form of stock.[10]

The ESOP Participants acknowledge that S corporations may distribute cash in lieu of stock.[11] Rather, they seem to argue that the ESOP's distribution of cash is the legal equivalent of the employer's repurchase of shares from the ESOP Participants. They cite no authority for this novel proposition, and we reject it. The employees had the right to receive cash distributions from the ESOP trust; they had no right to receive any cash payment from CPES.

Similarly, the ESOP Participants point out that the ESOP Plan provides that they are to receive their vested benefits following the termination of the plan.[12] They conclude that, "whether in the form of

---

[10] Section 14(b) of the ESOP Plan discusses a "put option." However, this section explicitly does not apply to distribution of capital accumulation as discussed in section 13(b), which allows the ESOP to forego a distribution in stock because it is an S corporation.

[11] As the bankruptcy court pointed out, the ESOP Participants conceded that CPES was not permitted to make any distribution directly to the ESOP Participants.

[12] The ESOP Participants argue that the ESOP terminated at the latest on the petition date, thus triggering the stock repurchase obligation. We need not decide if or

shares of [CPES] or cash [funded by CPES], the Participants are entitled to payment from [CPES] under the ESOP."

The ESOP Participants misconstrue the ESOP Plan. Termination of the ESOP triggers certain distribution rights, but section 19 of the ESOP Plan does not require that those distributions be made in the form of CPES stock. The ESOP Participants are entitled to a cash distribution, but that distribution comes from the ESOP, not the Debtors.

Therefore, the ESOP Participants did not have a right to any payment from the Debtors (as opposed to the ESOP). As such, they could not properly assert a proof of claim against the Debtors. The cases they rely on do not convince us otherwise and, in any event, are not binding.

*In re Indian Jewelers Supply Co.*, 604 B.R. 408 (Bankr. D.N.M. 2019), is readily distinguishable. That case similarly concerned the treatment of the claims of three ESOP participants against their employer, a chapter 11 debtor, whose shares were held in an ESOP trust for the employees. *Id.* at 410. However, unlike this case, the employees did have the right to receive stock, and they had a "put" option which, if exercised, would require the employer to buy the stock directly from the employees. *Id.* at 411. The first claimant was allowed to assert a claim because she held a promissory note issued to the claimant when she exercised her "put" option, *id.* at 415-16; the second claimant's distributions were improperly refused by the debtor,

---

when the ESOP terminated, because the Debtors had no obligation to buy stock from, or distribute cash to, the ESOP Participants upon plan termination.

12

who did not allow the claimant to exercise his "put" option, *id.* at 416; and the third claimant was "trying to collect his retirement benefits from the Debtor," *id.* at 417. None of these situations are applicable to this appeal: in this case, it is the ESOP, not the Debtors, that distributes retirement benefits to the ESOP Participants.

*Merrimac Paper Co. v. Harrison (In re Merrimac Paper Co.)*, 420 F.3d 53 (1st Cir. 2005), is similarly unavailing. As in *Indian Jewelers*, the relevant ESOP plan provided that the vested portion of an employee's individual account would be distributed to him in the form of stock, and he could enforce a "put" option. The claimant held a promissory note issued by the debtor for the value of the redeemed shares; this gave the claimant a right to payment against the debtor and entitled him to assert an unsecured claim. The ESOP Participants here do not have similar rights against the Debtors.

The ESOP Participants next argue that Arizona law provides that they are on parity with unsecured creditors. They cite Arizona Revised Statutes § 10-640(F), which provides that "[a] **corporation's indebtedness to a shareholder incurred by reason of a distribution** made in accordance with this section is at parity with the corporation's indebtedness to its general, unsecured creditors . . . ." (Emphasis added.) This statute is of no moment. As discussed above, the Debtors were not indebted to the ESOP Participants due to stock distributions or otherwise; rather, CPES funds the ESOP with company stock and cash, and only the ESOP has obligations to

13

make distributions to the employees.

Finally, the ESOP Participants assert that they were entitled to bring their claims under 29 U.S.C. § 1132(a). That section creates certain private rights of action in favor of plan participants, beneficiaries, and fiduciaries. But none of those private rights of action allows the ESOP Participants to assert rights to payment against the Debtors.

For example, section 1132(a)(1)(B) allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." But as we have explained, under the terms of this ESOP plan, the ESOP trust owes benefits to the participants; the Debtors do not.

Similarly, section 1132(a)(2) permits a participant or beneficiary to sue "for appropriate relief under section 1109 of this title." Section 1109 in turn makes plan fiduciaries "personally liable to make good **to such plan** any losses to the plan" caused by a breach of duties under ERISA, "and to restore **to such plan** any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . ." 29 U.S.C. § 1109(a) (emphases added). By its terms, the statute obligates the fiduciary to make the plan (i.e., the ESOP trust) whole and does not create a payment obligation to plan participants.

Finally, 29 U.S.C. § 1132(a)(4) authorizes a participant or beneficiary to sue "for appropriate relief in the case of a violation of section 1025(c) or

14

1032(a) of this title[.]" Those sections require the "administrator" or "plan administrator" of the plan to provide certain notices and statements to participants and beneficiaries. CPES was the plan administrator of the ESOP Plan, so it owed a duty directly to the ESOP Participants to provide the required reports and statements. The ESOP Participants say in their briefs that they did not receive all required statements and reports, but as far as we can tell from the record, their proofs of claim did not assert claims based on that failure.[13]

In short, ERISA does not give the ESOP Participants a right to payment from the Debtors and does not transform them into unsecured creditors of the Debtors.

The ESOP Participants rely on *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008), to support their position that they are entitled to allege claims for breach of fiduciary duty directly against the Debtors under ERISA. In that case, the U.S. Supreme Court held that individual plan participants could assert claims on behalf of a benefits plan. *Id.* at 256. But *LaRue* is inapplicable. In that case, the employer had allegedly breached fiduciary duties to the plan. The Court stated that, because the appeal arose out of a motion to dismiss, "we must assume that respondents

---

[13] As we explain in the following section, we cannot review the proofs of claim themselves because the ESOP Participants did not include them in their excerpt of record and we have been unable to locate them on the bankruptcy court's docket. The lengthy excerpt from the proofs of claim in the ESOP Participants' reply brief does not assert a claim based on the failure to provide reports and statements.

15

breached fiduciary obligations defined in § 409(a) . . . ." *Id.* at 252. In this case, however, the Debtors do not owe the ESOP or the ESOP Participants any fiduciary duty. Rather, the ESOP Plan provides that "[t]he members of the Committee[14] shall be the named fiduciaries with authority to control and manage the operation and administration of the Plan." The ESOP Participants do not point to any law or agreement imposing fiduciary duties on the Debtors.[15]

## B.  The ESOP Participants' claims were duplicative of the ESOP Trustee's claims.

The ESOP Participants argue that the bankruptcy court erred in holding that their claims were duplicative of the ESOP Trustee's claims. We

---

[14] According to the ESOP Plan, the Administrative Committee "is appointed by the Board of Directors."

[15] The definition of a "fiduciary" under ERISA provides:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . . , or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see also Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (The Ninth Circuit has "recognized that where members of an employer's board of directors have responsibility for the appointment and removal of ERISA trustees, those directors are themselves subject to ERISA fiduciary duties, albeit only with respect to trustee selection and retention."). The ESOP Participants have not demonstrated that the Debtors fall within this definition. The ESOP Participants believe that the ESOP Trustee, the Debtors' officers and directors, and possibly others breached fiduciary duties to them, but they do not show that the Debtors owed them any such duty.

discern no error.

The ESOP Participants have not included the proofs of claim in their excerpts of record or directed us to where we can find them in the record. Because we do not have the proofs of claim before us, we cannot review them. *See Brown v. State Bar of Ariz. (In re Bankr. Petition Preparers Who Are Not Certified Pursuant to Requirements of Ariz. Sup. Ct.)*, 307 B.R. 134, 144 (9th Cir. BAP 2004) ("We need not examine the record beyond that provided in the excerpts."); *Kritt v. Kritt (In re Kritt)*, 190 B.R. 382, 387 (9th Cir. BAP 1995) ("The appellants bear the responsibility to file an adequate record, and the burden of showing that the bankruptcy court's findings of fact are clearly erroneous. Appellants should know that an attempt to reverse the trial court's findings of fact will require the entire record relied upon by the trial court be supplied for review." (cleaned up)). Therefore, the record on appeal does not permit us to compare their claims with the ESOP Trustee's claims.

Even if we were to rely on the ESOP Participants' unverified representation of what they asserted in the proofs of claim, we would discern no error. The ESOP Participants allegedly asserted unsecured claims against the Debtors for the dollar amount of their ESOP account balances as of the end of 2018. They also apparently asserted "claims for the failure of the members of the [CPES's] Board of Directors, and the ESOP Board of Trustees or Committee and/or the ESOP Trustee, to ensure a proper valuation of the shares of [CPES's] capital stock."

As we have explained, we reject the proposition that the ESOP Participants had a right to payment from the Debtors based on the dollar amounts in the individual accounts as of 2018 as unsecured debt.

The claims against the Debtors for breach of fiduciary duty relating to the stock valuation is duplicative of the ESOP Trustee's first claim. He asserted a claim for $255,150 based on allegations that the 2018 valuation overstated the value of the stock held by the ESOP. This appears to be the same claim as that asserted by the ESOP Participants, even if the dollar amounts differ.

Furthermore, the ESOP Trustee was solely empowered to bring these claims under the ESOP Agreement and Liquidation Plan. Section C of the ESOP Agreement provides that the ESOP Trustee has the power to:

> (8) sue, defend, compromise, arbitrate or settle any suit or legal proceeding or any claim due it or on which it may be liable;

> (9) exercise any of the powers of any owner with respect to the Trust Assets; and

> (10) perform all acts which the Trustee shall deem necessary or appropriate and exercise any and all powers and authority of the Trustee under this Trust Agreement.

Similarly, the Liquidation Plan provided that "the ESOP Trustee shall retain responsibility, standing, and authority to commence, prosecute and settle lawsuits or actions on behalf of the holders of beneficial interests to the Equity Interest in the ESOP." The ESOP Participants cannot usurp the

ESOP Trustee's powers to exercise the rights of the ESOP.[16]

The ESOP Participants complain, in summary, that the ESOP Trustee's claims do not protect their rights. However, any claim recovered by the ESOP Trustee benefits the ESOP trust, which in turn benefits the ESOP Participants. Conversely, the ESOP Participants' strategy of sustained litigation diminishes the assets available for distribution. As counsel conceded at oral argument, the ESOP Participants are only entitled to receive the fair market value of the CPES stock; needless litigation that wastes estate assets is contrary to the ESOP Participants' interests.[17]

## CONCLUSION

The bankruptcy court did not err in sustaining the Liquidating Trustee's omnibus objections. We AFFIRM.

---

[16] The ESOP Participants argue that the plan confirmation order preserved their right to sue the Debtors. But the order only protected the ESOP Participants' rights to assert claims "to the extent any such claims or causes of action exist." In other words, the confirmation order only permitted them to retain existing causes of action; the bankruptcy court held (and we agree) that they had no causes of action against the Debtors. The confirmation order did not create any new claim.

[17] The ESOP Participants maintain that their proofs of claim provided sufficient information to support their claims. We do not understand why the ESOP Participants are arguing this point because the bankruptcy court agreed with them.